discretion by the sentencing court. This assertion of error is meritless.

## V. CONCLUSION

We find no merit to Newman's assertions of error. The district court did not err in denying his motions to suppress or his motion for discharge. There was sufficient evidence to sustain the convictions. The sentences imposed were not excessive. As such, we affirm.

Affirmed.

---

Abante, LLC, doing business as Abante Marketing and Abante Holdings, LLC, appellant, v. Premier Fighter, L.L.C., et al., appellees.

___ N.W.2d ___

Filed July 23, 2013.    No. A-12-600.

1. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.
2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
3. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
5. **Actions: Proof.** In order to maintain an action for money had and received, a plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff.
6. **Actions: Words and Phrases.** An action for money had and received falls under the common-law class of assumpsit and is an action at law.
7. **Actions: Contracts: Equity: Restitution: Unjust Enrichment.** An action in assumpsit for money had and received may be brought where a party has received money that in equity and good conscience should be repaid to another. In such a

circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment.

 8. **Unjust Enrichment: Words and Phrases.** Unjust enrichment has been defined to mean a transfer of a benefit without adequate legal ground.

 9. **Unjust Enrichment: Contracts.** One who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right.

10. **Claims: Restitution: Notice.** A payee without notice who accepts funds from a third party in satisfaction of a valid claim as a creditor of another person takes free of the third party's restitution claim to which it would otherwise be subject.

11. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.

12. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.

Appeal from the District Court for Sarpy County: David K. Arterburn, Judge. Affirmed.

John C. Fowles, of Fowles Law Office, P.C., L.L.O., for appellant.

Steven M. Delaney, of Reagan, Melton & Delaney, L.L.P., for appellee MMAStop, Inc.

Inbody, Chief Judge, and Irwin and Moore, Judges.

Moore, Judge.

Abante, LLC, doing business as Abante Marketing and Abante Holdings, LLC, appeals from an order of the district court for Sarpy County, Nebraska, that entered summary judgment in favor of MMAStop, Inc., one of the appellees. Abante challenges MMAStop's entitlement to retain certain funds paid to it by Abante based upon fraudulent representations from Matthew H. Anselmo. We find that because MMAStop did not have knowledge of Anselmo's fraud, acted in good faith as an innocent party, and had a valid legal basis to retain the funds it received, the district court correctly entered summary judgment in its favor.

## FACTUAL BACKGROUND

This case appears before us for a second time. In its first appearance, we dismissed Abante's appeal for lack of jurisdiction because the initial order granting summary judgment on behalf of MMAStop did not dispose of all of the claims against all of the parties and did not make an express determination and direction as required under Neb. Rev. Stat. § 25-1315 (Reissue 2008). See *Abante, LLC v. Premier Fighter*, 19 Neb. App. 730, 814 N.W.2d 109 (2012). Subsequently, the district court entered an order certifying the case under § 25-1315. Abante again appeals.

Anselmo was the sole owner of M & M Marketing, L.L.C., which in turn owned Premier Fighter, L.L.C. Premier Fighter was a retail clothing line that was primarily focused on mixed martial arts apparel. MMAStop is a business engaged in the retail and Internet sale of mixed martial arts apparel and equipment. Abante is a business engaged in screen printing, embroidering, and the sale of promotional products to corporate and school clients. At the time of the summary judgment proceedings below, Anselmo was incarcerated in a federal prison as a result of a fraud conviction.

In 2008, MMAStop made two separate $80,000 loans to Premier Fighter, which it understood were for the purpose of funding a merchandise order. The terms for each loan, although unwritten, required repayment with 50-percent interest within 30 days. The first loan was made on April 14, 2008, and was repaid in full by Premier Fighter on May 9 in the amount of $120,000 ($80,000 principal plus $40,000 interest). The second loan was made by MMAStop on May 30. When the second loan was not repaid within the agreed period, Anselmo provided MMAStop with a number of excuses. At this point, MMAStop's officers began to grow concerned. At the end of July, Anselmo advised MMAStop that it would receive a $40,000 wire transfer as partial payment of the debt. MMAStop received this payment on July 22. The remaining $80,000 arrived in a separate wire transfer a week later. These wire transfers were made by Abante, as discussed further below. MMAStop applied these sums in

complete payment of Premier Fighter's debt, including both principal and interest.

In separate dealings with Anselmo, Abante was induced to enter into a financial transaction with Premier Fighter for the funding of a merchandise order from a retailer. Anselmo admitted that he altered a merchandise invoice in order to induce Abante to loan the money. In late July 2008, Abante agreed to provide Premier Fighter with the sum of $240,000 in exchange for a 100-percent return on its investment. Abante's owners did not believe this return was irregular in the retail clothing business market. After receiving instructions from Anselmo, Abante sent MMAStop a total of $120,000 through two wire transfers, which Abante believed was for the purpose of beginning production of the merchandise necessary to fill the order. Abante transferred the remaining $120,000 directly to Premier Fighter. Anselmo, as an employee and agent of Premier Fighter, executed a promissory note to Abante in the amount of $240,000, with 100-percent interest, which was to be paid on or before October 12, 2008. Abante has received only one payment of $3,500 on this note.

There is no dispute that the $120,000 that Abante wired to MMAStop was not used for the production of any merchandise, but was used to satisfy Premier Fighter's outstanding debt to MMAStop. Abante's operative complaint sought recovery from Anselmo, M & M Marketing, and Premier Fighter for the unpaid promissory note and against Anselmo for damages resulting from his alleged fraud. In its claim against MMAStop, Abante sought recovery of the wired money in the sum of $120,000 on the theory of money had and received.

MMAStop moved for summary judgment, and at the hearing, numerous depositions and exhibits were received in evidence. On February 24, 2011, the district court entered an order granting summary judgment in favor of MMAStop, finding that Abante's cause of action for money had and received against MMAStop was without merit. Following the final order entered on June 29, 2012, Abante appeals.

## ASSIGNMENT OF ERROR

Abante assigns, summarized and restated, that the district court erred in granting summary judgment in favor of MMAStop.

## STANDARD OF REVIEW

[1] The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court. *State v. Coupens*, 20 Neb. App. 485, 825 N.W.2d 808 (2013).

[2,3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

*Jurisdiction.*

[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013). Therefore, we revisit the jurisdiction question in this case.

As we stated in our previous opinion, the first appeal in this case was dismissed because the order appealed from failed to dispose of the claims against all parties involved in the action and failed to make the necessary findings for certification under § 25-1315. See *Abante, LLC v. Premier Fighter*, 19 Neb. App. 730, 814 N.W.2d 109 (2012). After our dismissal, the district court entered an order certifying a final order on June 29, 2012. We now review that order to

determine whether it satisfies the jurisdictional requirements of a final order.

In its order certifying a final order, the district court declared that its February 24, 2011, order was a final order within the meaning of Neb. Rev. Stat. § 25-1902 (Reissue 2008). The district court also specified that this final order applied only to Abante's claim against MMAStop. The court found five factors to support this order: (1) Two of the named defendants (Premier Fighter and M & M Marketing) are in bankruptcy, and the case is stayed as to those defendants and as to Anselmo; (2) MMAStop was the only defendant to file an answer in the litigation; (3) Anselmo has been incarcerated for the majority of the proceedings; (4) Abante and MMAStop were planning to proceed to trial without the other parties; and (5) the cause of action against MMAStop was distinct from the causes of action asserted against the remaining defendants.

We find that the district court's reasoning in its June 29, 2012, order satisfies the requirements of § 25-1315. See *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007) (providing various factors trial court should consider when determining whether to certify final judgment). Thus, we conclude we have jurisdiction to address the present appeal.

*Entry of Summary Judgment
in Favor of MMAStop.*

[5,6] Abante's cause of action against MMAStop is one of assumpsit, which is also referred to as an action for money had and received. In order to maintain an action for money had and received, a plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011). Although founded on equitable principles, an action for money had and received falls under the common-law class of assumpsit and is an action at law. See *Daubman v. CBS Real Estate Co.*, 254 Neb. 904, 580 N.W.2d 552 (1998).

[7] An action in assumpsit for money had and received may be brought where a party has received money that in equity

and good conscience should be repaid to another. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). In such a circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment. *Id.* When a party uses an assumpsit action in this sense, it is a quasi-contract claim sounding in restitution. *Id.* Restitution is predominantly the law of unjust enrichment. *Id.*

Neither party disputes that Abante established the first two elements of its claim; namely, that MMAStop received a total of $120,000 in July 2008 and has retained possession of the money. Thus, the central issue in this case is whether justice and fairness require MMAStop to return this money to Abante. This question, in turn, depends on whether MMAStop, as payee, has been unjustly enriched by receipt of the $120,000.

[8-10] Unjust enrichment has been defined to mean a "'transfer of a benefit without adequate legal ground.'" *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. at 866, 809 N.W.2d at 743 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1, comment *b*. (2011)). One who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right. *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 N.W.2d 523 (1995). The Restatement, *supra*, § 67(1)(a), provides that a payee without notice who accepts funds from a third party in satisfaction of a valid claim as a creditor of another person takes free of the third party's restitution claim to which it would otherwise be subject.

Because this case was disposed of by summary judgment, the question before us is whether there are any genuine issues of material fact regarding MMAStop's alleged unjust enrichment in retaining the money received from Abante. After reviewing the evidence in the light most favorable to Abante, and giving it the benefit of all reasonable inferences, we conclude that there are no genuine issues of material fact and that the district court was correct in determining that MMAStop was not unjustly enriched.

[11,12] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Durre v. Wilkinson Development*, 285 Neb. 880, 830 N.W.2d 72 (2013). After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id*.

First, there is no dispute in the facts regarding the transactions between MMAStop and Anselmo on behalf of Premier Fighter. MMAStop loaned $80,000 to Premier Fighter on April 14, 2008, with the requirement that repayment of the principal and 50-percent interest occur within 30 days. MMAStop received repayment of $120,000 on this first loan from Premier Fighter on May 9. MMAStop made a second loan under the same terms to Premier Fighter on May 30. The record shows that the second loan was not repaid within 30 days and that Anselmo provided MMAStop with a number of excuses, which caused MMAStop's officers to grow concerned. Abante did not adduce evidence to support its suggestion that MMAStop was or should have been aware of Anselmo's alleged fraudulent conduct at this point.

Next, the evidence adduced by MMAStop regarding payment of the second loan clearly shows that it received the wire transfers totaling $120,000 with the representation from Anselmo that they were in repayment of the second loan. Specifically, Anselmo advised MMAStop that funds to pay the loan would be wired to MMAStop and this in fact occurred. The evidence presented by MMAStop further indicated that MMAStop was not aware that Abante was providing these funds. In fact, Anselmo stated in his deposition that he never told MMAStop where he acquired the money to repay the second loan. In response, Abante presented some evidence that it may have verified bank account information with MMAStop prior to the wire transfer; however, no evidence

was adduced to indicate that Abante was the source of the funds being wired.

Further, and more important, the undisputed evidence in the record shows that MMAStop was not aware of Premier Fighter's dealings with Abante prior to receiving the wire transfers. The undisputed evidence also shows that MMAStop was not aware that Abante was making payment on behalf of Premier Fighter under the belief that the money was necessary for MMAStop to begin merchandise production.

Based on the foregoing undisputed facts, MMAStop argues that it has a legal basis for retaining the money received from Abante. Relying principally on the Nebraska Supreme Court's decision in *Federated Mut. Ins. Co. v. Good Samaritan Hospital*, 191 Neb. 212, 214 N.W.2d 493 (1974), MMAStop contends that it is an innocent creditor that has not been unjustly enriched by retaining this money.

In *Good Samaritan Hospital, supra*, the Nebraska Supreme Court considered whether an insurer could recover an overpayment from a hospital that was the result of the insurer's own mistake. The insurer's policy capped its insured's benefits at $12,047.30, but it paid the hospital a total of $19,822.78 on behalf of its insured. The hospital had rendered services to the insured in the amount of $13,915.20. When the insurer later requested that the hospital refund the payment exceeding policy limits, the hospital refunded only $5,816.31. The insurer filed suit to recover the additional $1,959.17 that had been applied to the insured's hospital bill but was in excess of the insured's policy limits. There was no dispute that the insurer made the mistake or that the hospital had acted in good faith and without knowledge of the mistake when it received payment. The court found for the hospital, holding that

> [a] creditor who has innocently received payment of a debt from a third party is under no duty to make restitution to the third party if it is later discovered that the third party had no responsibility to make the payment and payment was made solely because of the third party's mistake.

*Id.* at 217, 214 N.W.2d at 496. The court also specifically found that the hospital had not been unjustly enriched because

it had retained only the amount it was due for the services performed. *Id*.

Although there are obvious factual distinctions between this case and *Good Samaritan Hospital, supra*, we agree with MMAStop that the same principles apply in this case. After receiving Anselmo's instructions, Abante transferred $120,000 to MMAStop under the mistaken belief that MMAStop was going to produce Premier Fighter's merchandise. MMAStop was not involved in Anselmo's fraud, did not have knowledge of Abante's loan with Premier Fighter, and acted in good faith. MMAStop had previously loaned Premier Fighter $80,000, to be paid within 30 days with 50-percent interest, and had been repaid $120,000. MMAStop entered into an identical second loan with Premier Fighter and believed the wire transfers totaling $120,000 were made on behalf of Premier Fighter in repayment of its second loan. As such, MMAStop innocently received this money as payment of the debt from Premier Fighter and had a legal right to retain the money. Therefore, MMAStop presented evidence to show that it was not unjustly enriched by retaining this money, and Abante has failed to adduce evidence to show the existence of a genuine issue of material fact.

Abante also contends, without citing any evidence or authority to support the conclusion, that MMAStop would be unjustly enriched if allowed to profit from its dealings with Anselmo while other creditors are faced with substantial losses. The record contains information showing that involuntary bankruptcy petitions were filed against Premier Fighter and M & M Marketing showing creditors having total claims exceeding $1 million against Anselmo's companies. This evidence does not change the conclusion that MMAStop has not been unjustly enriched in receiving money in repayment of its loan to Premier Fighter. Contrary to Abante's argument, MMAStop did not profit from the retention of the wire transfers; rather, it received exactly what it was entitled to under the terms of the second loan to Premier Fighter. Under the law of assumpsit, which focuses on whether the payee was unjustly enriched, the district court correctly found that MMAStop was entitled to retain the money.

As stated in the above analysis, we do not find any genuine issue of material fact regarding MMAStop's alleged unjust enrichment. Therefore, we conclude the district court was correct in entering summary judgment in favor of MMAStop.

## CONCLUSION

Based on our review of the record, the facts are undisputed that MMAStop acted in good faith without knowledge of Anselmo's fraud or Abante's mistake in paying MMAStop. Because MMAStop has legal justification to retain the funds it received from Abante, justice and fairness do not require it to return the money. Therefore, we affirm the decision of the district court.

Affirmed.

————————

In re Interest of Aaliyah M. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
Ronald M., appellant.
___ N.W.2d ___

Filed July 23, 2013.   No. A-12-979.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Parental Rights.** Parents have a recognized liberty interest in raising their children.
3. **Parent and Child: Due Process.** The parent-child relationship is afforded due process protection.
4. **Constitutional Law: Due Process: Appeal and Error.** The appellate courts apply a three-part test for due process protecting liberty interests: (1) Is there a protected liberty interest at stake? (2) If so, what procedural protections are required? (3) Given the facts of the case, was there a denial of the process that was due?
5. **Words and Phrases.** The word "or," when used properly, is disjunctive.
6. **Constitutional Law: Due Process: Parental Rights.** In a hearing on the termination of parental rights without a prior adjudication hearing, where such termination is sought under Neb. Rev. Stat. § 43-292(1) through (5) (Cum. Supp. 2012), such proceedings must be accompanied by due process safeguards.