Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/19/2017 09:36 AM CDT

DENNIS WALKER ET AL., APPELLANTS AND
CROSS-APPELLEES, v. JOHN PROBANDT,
APPELLEE, AND JOHN RAYNOR,
APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed September 12, 2017.   No. A-16-844.

1. **Default Judgments: Pleadings: Appeal and Error.** Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify reversal on such a ground.

2. **Default Judgments.** A trial court should defer entering a default judgment against one of multiple defendants where doing so could result in inconsistent and illogical judgments following determination on the merits as to the defendants not in default.

3. **Default Judgments: Pleadings: Damages.** In the case of an original action filed in the district court, the failure of a defendant to file a responsive pleading entitles the plaintiff to a default judgment, without evidence in support of the allegations of the petition, except as to allegations of value or damages.

4. **Negotiable Instruments: Principal and Surety.** If an instrument is issued for value given for the benefit of a party to the instrument (accommodated party) and another party to the instrument (accommodation party) signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party for accommodation.

5. **Negotiable Instruments: Principal and Surety: Words and Phrases.** An accommodation party is one who signs the instrument for the purpose of lending his credit to some other person or party.

6. **Promissory Notes: Guaranty.** The assignment of a promissory note and its guaranties to a guarantor does not enhance the guarantor's right of

recovery against a coguarantor; rather, recovery against a coguarantor remains limited to the coguarantor's proportionate share.

7. **Negotiable Instruments: Intent.** In determining the identity of the party accommodated, the intention of the parties is determinative.

8. **Actions: Contribution: Time: Liability.** Co-obligors to a debt are each liable for a proportionate share of the debt as a whole, and an action for contribution does not accrue until a co-obligor has paid more than his or her proportionate share of the debt as a whole.

9. **Negotiable Instruments: Security Interests: Contribution: Liability.** If the obligation of a party is secured by an interest in collateral not provided by an accommodation party and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay, taking into account rights of contribution, if impairment had not occurred.

10. **Security Interests.** Impairing value of an interest in collateral includes failure to obtain or maintain perfection or recordation of the interest in collateral.

11. **Principal and Surety: Words and Phrases.** Rights of the surety to discharge are commonly referred to as "suretyship defenses."

12. **Contracts: Guaranty: Waiver.** The defense that a guarantor is discharged by a creditor's impairment of collateral can be waived by an express provision in the guaranty agreement.

13. **Reformation: Words and Phrases.** A mutual mistake is a belief shared by the parties, which is not in accord with the facts.

14. ____: ____. A mutual mistake is a mistake common to both parties in reference to the instrument to be reformed, each party laboring under the same misconception about its instrument.

15. **Reformation: Intent.** A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties.

16. **Reformation: Presumptions: Intent: Evidence.** To overcome the presumption that an agreement correctly expresses the parties' intent and therefore should not be reformed, the party seeking reformation must offer clear, convincing, and satisfactory evidence.

17. **Evidence: Words and Phrases.** Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.

18. **Uniform Commercial Code: Negotiable Instruments: Words and Phrases.** A holder in due course means the holder takes an instrument

(1) for value, (2) in good faith, (3) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (4) without notice that the instrument contains an unauthorized signature or has been altered, (5) without notice of any claim to the instrument described in Neb. U.C.C. § 3-306 (Reissue 2001), and (6) without notice that any party has a defense or claim in recoupment described in Neb. U.C.C. § 3-305(a) (Reissue 2001).

19. **Contracts: Negotiable Instruments.** Unless one has the rights of a holder in due course, he is subject to all the defenses of any party which would be available in an action on a simple contract.

20. **Breach of Contract: Damages.** In a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position he would have occupied if the contract had been performed, that is, to make the injured party whole.

21. **Damages.** As a general rule, a party may not have double recovery for a single injury, or be made "more than whole" by compensation which exceeds the actual damages sustained.

22. **Actions: Accord and Satisfaction.** Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had.

23. **Accord and Satisfaction: Damages.** Where the plaintiff has received satisfaction from a settlement with one defendant for injury and damages alleged in the action, any damages for which a remaining defendant would be potentially liable must be reduced pro tanto.

24. **Actions: Parties.** Every action must be prosecuted in the name of the real party in interest.

25. **Actions: Parties: Standing.** To determine whether a party is a real party in interest, the focus of the inquiry is whether that party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.

26. **Assignments: Words and Phrases.** As a general rule, an assignment is a transfer vesting in the assignee all of the assignor's rights in property which is the subject of the assignment.

27. **Assignments.** The assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf, without the name of the assignor.

28. **Assignments: Consideration.** An assignee may recover the full value of an assigned claim regardless of the consideration paid for the assignment.

29. **Pleadings: Evidence.** Admissions made in superseded pleadings are no longer judicial admissions, but, rather, simple admissions.

30. **Contracts: Consideration.** Generally, there is sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. What that benefit and detriment must be or how valuable it must be varies from case to case. It is clear, however, that even "a peppercorn" may be sufficient.

31. \_\_\_\_: \_\_\_\_. A benefit need not necessarily accrue to the promisor if a detriment to the promisee is present, and there is a consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether or not there is any actual loss or detriment to him or actual benefit to the promisor.

32. \_\_\_\_: \_\_\_\_. For the purpose of determining consideration for a promise, the benefit need not be to the party contracting, but may be to anyone else at the contracting party's procurement or request.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed in part, and in part reversed and remanded with directions.

Diana J. Vogt and James D. Sherrets, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Patrick M. Heng, of Waite, McWha & Heng, for appellee John Raynor.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

This case calls into question the ability of a co-obligor to settle a claim on a promissory note for less than the amount due, and in return obtain the authority to direct assignment of the note to a third party of his choosing for full enforcement against another co-obligor. Under the facts of this case, we find recovery must be limited to the amount outstanding on the note.

## II. BACKGROUND

A & G Precision Parts, LLC (Parts LLC), was a limited liability company whose members at the time of organization were Dennis Walker, John Raynor, John Probandt, John

Brazier, and Walter Glass. The five members of Parts LLC formed a second limited liability company, A&G Precision Parts Finance, LLC (Finance LLC).

In 2002, Finance LLC, Walker, Raynor, and Brazier obtained a loan from Five Points Bank of Grand Island, Nebraska, for approximately $2.1 million and delivered the proceeds of the loan to Parts LLC. Parts LLC and Finance LLC (collectively the LLCs) did not make the loan payments as required, and the bank made demand for full payment. In September 2004, Raynor filed personal bankruptcy, and his personal liability on the Five Points Bank loan was discharged in bankruptcy in 2005.

In March 2008, the parties negotiated with First State Bank (FSB) to refinance the Five Points Bank loan. In conjunction with the loan, Parts LLC, Finance LLC, Walker, Raynor, Brazier, and Mark Herz signed a promissory note for $1.5 million. Under the promissory note, Walker, Raynor, Brazier, and Herz were cosigners on the loan and assumed joint and several liability for the repayment of the loan. The LLCs defaulted on the loan, and FSB commenced this action to recover on the note in February 2009.

In June 2011, Parts LLC, Finance LLC, Walker, Walker's wife, FSB, and Five Points Bank entered into a settlement agreement and mutual release under which Walker agreed to pay FSB $1.05 million to settle the claims FSB asserted against him and the LLCs. In exchange, FSB assigned the FSB note and related agreements to an entity of Walker's choosing; he selected Skyline Acquisition, LLC (Skyline). As a result of the settlement and assignment, Walker and the LLCs became plaintiffs in this action. On the first day of trial, the plaintiffs orally moved to amend the pleadings to name Skyline as a plaintiff, and the district court granted the motion.

Walker and the LLCs filed a motion for default judgment against Probandt on December 15, 2011. They asserted that Probandt never filed an answer and asked that judgment be entered against him in the amount of $2,134,832.99. The

district court denied the motion, finding that entering a default judgment as to one defendant prior to trial could result in inconsistent and illogical judgments following determination on the merits as to the remaining defendants.

Due to various settlement agreements and dismissals, the parties remaining at trial were Walker, the LLCs, and Skyline as plaintiffs, and Raynor and Probandt as defendants. Probandt did not appear at trial. Trial was held on the fourth amended complaint, which included four operative causes of action—two against Raynor and two against Probandt. Raynor's operative answer asserted several affirmative defenses and two counterclaims.

After the conclusion of trial, the district court entered an order which found in favor of Skyline as to one claim against Raynor but denied the remaining causes of action and Raynor's counterclaims. Specifically, the court found that the evidence established Raynor's liability to Skyline for repayment of the FSB note, because the full amount of principal and interest is due and Raynor has made no payments on the note and is in default. The court noted that the president of FSB testified that the principal amount due on the note as of the first day of trial was $1,430,260. Adding in the accrued interest up to the time of the court's order, judgment was entered in favor of Skyline and against Raynor for $2,306,244.76. In its order, the court stated that default judgment had previously been entered against Probandt on the FSB note. Walker, the LLCs, and Skyline (hereinafter collectively the appellants) appeal, and Raynor cross-appeals.

### III. ASSIGNMENTS OF ERROR

On appeal, the appellants assign that the district court erred in failing to enter an award of damages against Probandt for the full amount of the note and for the amount of money Probandt misappropriated from Parts LLC. On cross-appeal, Raynor assigns, restated and renumbered, that the district court erred in (1) failing to apply Nebraska's Uniform Commercial

Code (U.C.C.); (2) failing to give effect to the order of the bankruptcy court; (3) failing to find that he was an accommodation party and Walker was an accommodated party; (4) failing to apply the rule based on *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998) (Mandolfo Rule); (5) denying judgment on his counterclaim for contribution; (6) failing to find that his obligation on the debt was discharged; (7) failing to find mutual mistakes of fact; (8) allowing judgment in favor of Skyline because of lack of consideration; (9) entering judgment in favor of Skyline because Skyline sustained no injury and received a windfall; (10) failing to treat Walker as the real party in interest; (11) allowing foreign corporations to prosecute the action without certificates of authority; (12) allowing Walker and the LLCs to take inconsistent positions with respect to the enforceability of the FSB note; and (13) ignoring the "sole basis" stipulation.

## IV. STANDARD OF REVIEW

A suit for damages arising from breach of a contract, including breach of the terms of a promissory note, presents an action at law. *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998). In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Id*.

## V. ANALYSIS

### 1. DEFAULT JUDGMENT AGAINST PROBANDT

On appeal, the appellants assign that the district court erred in failing to enter an award of damages against Probandt. The appellants argue that because Probandt failed to appear and enter a responsive pleading, and the evidence was sufficient to establish his liability and damages, the court should have entered a default judgment. We find that the district court did not abuse its discretion in failing to grant a default judgment on the unjust enrichment claim, but that it should have granted a default judgment against Probandt on the

fraud/misappropriation claim. We therefore reverse the court's order denying the appellants' cause of action for fraud/misappropriation against Probandt.

[1,2] Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify reversal on such a ground. *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990). In denying the motion for default judgment before trial in the present case, the district court concluded that entry of a default judgment prior to trial could result in inconsistent and illogical judgments following determination on the merits as to the remaining defendants. In reaching its decision, the district court relied upon *State of Florida v. Countrywide Truck Ins. Agency*, 258 Neb. 113, 602 N.W.2d 432 (1999), in which the Nebraska Supreme Court held that under *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L. Ed. 60 (1872), a trial court should defer entering a default judgment against one of multiple defendants where doing so could result in inconsistent and illogical judgments following determination on the merits as to the defendants not in default.

Here, the operative complaint at the time the motion for default judgment was filed was the second amended complaint; however, between the date the motion was argued and the date on which the court entered its order, the appellants filed a revised third amended complaint. It is upon this complaint that the court denied the motion. In the revised third amended complaint, the appellants included two causes of action against Probandt. The first was a claim for unjust enrichment against Brazier, Herz, and Probandt. Therein, the complaint alleged that Brazier, Herz, and Probandt used a portion of the funds from the FSB loan to satisfy the loan which was owed to Five Points Bank by the LLCs and guaranteed by Probandt and Glass. The complaint alleged that because Probandt was a guarantor of the Five Points Bank loan, he benefited from the use of the FSB loan to pay off the Five Points Bank loan,

relieving him of his obligation to Five Points Bank. It further alleged that despite demands to pay, Brazier, Herz, and Probandt failed to pay the amount due.

The second cause of action involving Probandt was for fraud. This claim alleged that Probandt misappropriated funds from the original financing of Parts LLC to finance other business ventures; Probandt took unauthorized payments from Parts LLC; Probandt took money from Parts LLC and signed a promissory note in the amount of $64,859 but never repaid the note; and Probandt used funds of Parts LLC to pay rent on an apartment and pay personal living expenses.

Although the appellants' motion for default judgment was broad, at the hearing on the motion, the appellants' counsel limited the scope of her motion. Responding to an objection to an offered exhibit, she stated, "[T]hese number[s] go to just amounts that . . . Probandt took for his personal uses. There's a separate cause of action against . . . Probandt for misappropriation of funds; and this default judgment only goes to that cause of action."

Our review of the revised third amended complaint reveals that the cause of action to which counsel referred was the fraud/misappropriation claim. Under this cause of action, appellants sought recovery from only Probandt for actions he performed individually. It does not involve the other defendants and therefore a judgment against Probandt on this cause of action could not produce conflicting results. We determine that the court's analysis under *State of Florida v. Countrywide Truck Ins. Agency, supra*, is therefore inapplicable.

[3] In the case of an original action filed in the district court, the failure of a defendant to file a responsive pleading entitles the plaintiff to a default judgment, without evidence in support of the allegations of the petition, except as to allegations of value or damages. *Chapman v. Department of Motor Vehicles*, 8 Neb. App. 386, 594 N.W.2d 655 (1999). Because Probandt failed to file a responsive pleading, the appellants were entitled to a default judgment on their fraud/misappropriation

cause of action. It was then incumbent upon the appellants to prove damages.

The appellants argue on appeal that they sufficiently proved damages at trial via deposition testimony of Rex Hansen, a certified public accountant, and Herz. We agree that Hansen's testimony and the corresponding ledger offered at the close of appellant's case in chief establishes damages in the amount of $2,184,530.

Hansen testified that he classified expenditures by Probandt into two categories: "Bad" and "Sketch." According to Hansen, the "Bad" were expenditures "clearly used for something other than the daily operations of A&G" and the "Sketch" expenditures were composed of items that he "didn't understand what they were. There were some loan guarantees, financing costs, et cetera." The "Bad" totaled $2,184,530, and the "Sketch" totaled $477,661. We determine that the evidence sufficiently proved that Probandt misappropriated $2,184,530 from the LLCs; however, the evidence that the "Sketch" items represented additional misappropriations was insufficient due to Hansen's own admission that he did not understand what they were. Accordingly, the court should have entered a default judgment against Probandt in the amount of $2,184,530.

Because counsel limited the scope of her pretrial motion for default judgment to the claim for misappropriation of funds, the court did not err in failing to grant a default judgment against Probandt on the unjust enrichment claim. We further observe that the appellants did not move for default either at trial or after trial. See, e.g., *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986) (referencing plaintiff's motion for default judgment made after trial).

We note that in its memorandum order entered after trial, the court stated, "During the early stages of the case, the court entered a default judgment against . . . Probandt on the plaintiffs' claims under the First State Bank note." The appellants argue that the court's statement was in error, and Raynor takes no position on the assigned error. We agree that

no order is contained in our record granting default judgment against Probandt. However, we interpret the court's misstatement to relate to a claim other than the two claims contained in the operative complaint because the district court's order specifically rejected these two claims, citing a lack of proof. Therefore, this misstatement does not constitute reversible error.

## 2. U.C.C.

On cross-appeal, Raynor posits several arguments with respect to the U.C.C. He argues that the district court failed to apply the U.C.C., failed to give effect to the order of the bankruptcy court, failed to find that he was an accommodation party and Walker was an accommodated party as defined by the U.C.C., failed to apply the Mandolfo Rule, erred in denying judgment on his contribution counterclaim against Walker, and failed to find that his obligation on the debt was discharged under the U.C.C.

### (a) Failure to Apply U.C.C.

Raynor first claims that the district court erred in failing to apply the U.C.C. in entering judgment against him on the FSB note. He does not specify, however, in what way the court "ignor[ed]" the U.C.C. Brief for appellee on cross-appeal at 30. The parties stipulated that the FSB note is a negotiable instrument within the meaning of the U.C.C. When the district court addressed Raynor's arguments regarding accommodation and accommodated parties in its order, the court cited to the U.C.C. Although it disagreed with Raynor's position, the court considered certain sections of the U.C.C. in reaching its decision. We therefore disagree with Raynor's assertion that the district court did not address the U.C.C.

### (b) Accommodation Party and
### Accommodated Party

Raynor next argues that the district court failed to give effect to the bankruptcy court order to find that he was an

accommodation party and failed to find that Walker was an accommodated party. He asserts that because, at the time he signed the FSB note, he had no ownership in the LLCs and was not personally liable for the Five Points Bank loan, he qualifies as an accommodation party under the U.C.C. He further claims that Walker is an accommodated party and that under the U.C.C., an accommodated party is prohibited from seeking contribution from an accommodation party. Therefore, he argues that the judgment entered against him is erroneous.

[4] If an instrument is issued for value given for the benefit of a party to the instrument (accommodated party) and another party to the instrument (accommodation party) signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "'for accommodation.'" Neb. U.C.C. § 3-419(a) (Reissue 2001).

[5] An accommodation party is one who signs the instrument for the purpose of lending his credit to some other person or party. See *Bachman v. Junkin*, 129 Neb. 165, 260 N.W. 813 (1935). See, also, 10 C.J.S. *Bills and Notes* § 26 (2008) (party accommodated is one to whom name of accommodation party is loaned).

The claim upon which judgment was entered against Raynor was based on his liability to FSB for nonpayment of the loan. Specifically, the operative complaint alleges that Raynor was a maker and guarantor of the promissory note to FSB in the amount of $1.5 million and that Raynor failed to pay amounts due on the loan; therefore, FSB, later amended to Skyline as assignee, is entitled to judgment against Raynor for the outstanding balance plus interest. The district court agreed, finding that Raynor signed the note but failed to repay the loan and was therefore liable. In its order, the district court stated that for "the sake of resolving the claims, the court assumed Raynor was an accommodation maker." The court observed

that as an accommodation party, Raynor remained liable to FSB, and subsequently to Skyline. His status of an accommodation party would only be relevant in an action for contribution by the accommodated party. However, because this was not a cause of action for contribution raised by Walker individually, the issue of contribution between an accommodated party and an accommodation party was immaterial.

We find no error in the district court's analysis. As stated above, the claim on the FSB note was prosecuted in the name of Skyline, the assignee of the note. The court's judgment was in favor of Skyline, not Walker. As such, the status of Raynor and Walker under the U.C.C., and whether Walker is barred from seeking contribution from Raynor, have no effect on whether Skyline can recover on the note from Raynor. This argument therefore lacks merit.

### (c) Mandolfo Rule

[6] Raynor next argues that the district court erred in failing to apply the Mandolfo Rule, which he claims prohibits enhancing recovery by reason of the assignment of a promissory note after default. See *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998). See, also, *Rodehorst v. Gartner*, 266 Neb. 842, 669 N.W.2d 679 (2003). In the cases Raynor cites, the Supreme Court held that the assignment of a promissory note and its guaranties to a guarantor does not enhance the guarantor's right of recovery against a coguarantor; rather, recovery against a coguarantor remains limited to the coguarantor's proportionate share. See, *Mandolfo v. Chudy, supra*; *Rodehorst v. Gartner, supra*.

In the present case, however, the assignment of the note was not made to a coguarantor of the note, but, instead, to Skyline. Raynor argues that Skyline is a mere alter ego of Walker and that the assignment of the note to Skyline was a "[s]ham [t]ransaction" because it was done for the sole purpose of enhancing Walker's recovery. Brief for appellee on cross-appeal at 34. We find no evidence in the record to support

this argument, however, and Raynor cites to none in his brief. To the contrary, the only evidence regarding Skyline is that it is owned by Walker and his wife. None of the factors necessary to evaluate the existence of an alter ego were presented. As such, we find the holdings of *Mandolfo* and *Rodehorst* are inapplicable to the present case and do not prohibit Skyline's recovery on the FSB note from Raynor.

(d) Counterclaim for Contribution

Raynor argues that the district court erred in denying his counterclaim for contribution from Walker, asserting that under § 3-419, Walker is the party primarily responsible for the debt because of his status as an accommodated party. As such, Raynor argues that his contribution claim should have been granted. We disagree.

The district court denied Raynor's contribution claim because there was no evidence that Raynor had paid any portion of the FSB debt. Raynor claims this "result ignores the duty of the Trial Court to fully dispose of all contribution issues of parties to the controversy regarding the personal liability for unpaid negotiable instruments according to each party's pecuniary obligation pursuant to Nebr. U.C.C., Article 3, Part 4." Brief for appellee on cross-appeal at 39.

Assuming without deciding that Raynor was an accommodation party, the evidence does not establish that Raynor signed the note in order to accommodate or benefit Walker; he stipulated that he signed it to assist Herz who was managing the business of the LLCs. In essence, Raynor signed it to assist the LLCs in obtaining the loan. With respect to the instrument, Walker held the same position Raynor did—that of cosigner who lent his credit in order to benefit the LLCs.

[7] The fact that Walker was an owner of the LLCs and received some benefit from the FSB note does not conclusively establish his status as an accommodated party. See *Empson v. Richter*, 113 Neb. 706, 204 N.W. 518 (1925) (mere fact that party may have received some benefit out of transaction

does not necessarily determine that he was an accommodated party). Rather, in determining the identity of the party accommodated, the intention of the parties is determinative. See 10 C.J.S. *Bills and Notes* § 26 (2008). There is no evidence that Raynor intended to assist Walker in obtaining a loan. Walker needed no accommodation to secure financing, because the undisputed evidence establishes that FSB offered financing to the LLCs based exclusively on Walker's financial strength and willingness to cosign. Thus, Raynor and Walker each cosigned the note in order to assist the LLCs, and therefore, Walker had no greater liability on the note than did Raynor.

[8] Co-obligors to a debt are each liable for a proportionate share of the debt as a whole, and an action for contribution does not accrue until a co-obligor has paid more than his or her proportionate share of the debt as a whole. See *Cepel v. Smallcomb*, 261 Neb. 934, 628 N.W.2d 654 (2001). Accordingly, until Raynor has paid more than his proportionate share of the debt as a whole, he has no basis for contribution from Walker or any other co-obligors. As a result, the district court did not err in denying Raynor's counterclaim for contribution from Walker.

### (e) Discharge of Raynor's Obligation

Raynor asserts that because FSB failed to properly secure Walker's collateral, his liability on the note is discharged under Neb. U.C.C. § 3-605 (Reissue 2001). We conclude that this defense has been waived.

[9-11] If the obligation of a party is secured by an interest in collateral not provided by an accommodation party and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay, taking into account rights of contribution,

if impairment had not occurred. § 3-605(f). Impairing value of an interest in collateral includes failure to obtain or maintain perfection or recordation of the interest in collateral. See § 3-605(g). Rights of the surety to discharge are commonly referred to as "suretyship defenses." § 3-605, comment 1.

[12] Here, however, Raynor waived his right to assert this defense. According to the promissory note Raynor signed in conjunction with the FSB loan, Raynor agreed to "waive any defenses . . . based on suretyship or impairment of collateral." The defense that a guarantor is discharged by a creditor's impairment of collateral can be waived by an express provision in the guaranty agreement. See *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 748 N.W.2d 645 (2008). Accordingly, we find that Raynor has waived his right to assert this defense.

### 3. Mutual Mistakes of Fact

Raynor argues that he is not liable for the debt to FSB because of mutual mistakes of fact among the parties. He argues that the evidence was clear that, at the time the FSB note was executed, all of the parties to the note mistakenly believed he retained an ownership interest in the LLCs and remained personally liable for the Five Points Bank note. He claims that but for the mistakes of fact, he would not have executed the FSB note. We find that Raynor failed to meet his burden of proving that mutual mistakes of fact exist.

[13-15] A mutual mistake is a belief shared by the parties, which is not in accord with the facts. *R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 798 N.W.2d 121 (2011). It is a mistake common to both parties in reference to the instrument to be reformed, each party laboring under the same misconception about its instrument. *Id*. A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties. *Id*.

[16,17] To overcome the presumption that an agreement correctly expresses the parties' intent and therefore should not be reformed, the party seeking reformation must offer clear, convincing, and satisfactory evidence. See *id*. Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Id*.

Raynor cites to no evidence in the record to support a conclusion that the promissory note does not express what was really intended by the parties. To the contrary, the parties intended that FSB would extend the loan in exchange for the cosigners' signatures. The promissory note reflects that intent. The fact that Raynor was no longer liable on the Five Points Bank debt nor a member of the LLCs is of no effect. As in *R & B Farms v. Cedar Valley Acres, supra*, there is no clear and convincing evidence that the parties mistakenly believed the contract to mean one thing when in reality it did not.

The burden was on Raynor to present clear and convincing evidence to overcome the presumption that the agreement correctly expresses the parties' intent. Because he failed to do so, the district court correctly rejected his argument.

### 4. SKYLINE'S STATUS AND REAL PARTY IN INTEREST

Raynor asserts several arguments with respect to the ability of Skyline and the LLCs to prosecute a case against him. Specifically, he argues that the district court erred in allowing a judgment in favor of Skyline, entering a judgment in contravention of the Nebraska Constitution, failing to treat Walker as a substantive owner of the FSB note and instead treating Skyline as the real party in interest, allowing foreign limited liability companies to prosecute the action without certificates of authority, and allowing Walker and the LLCs to take inconsistent positions on the enforceability of the FSB note.

(a) Lack of Consideration
From Skyline

Raynor argues that Skyline does not qualify as a holder in due course of the FSB note and that therefore, Skyline's enforcement of the note against him is subject to the personal defenses that existed between the original parties to the instrument.

[18] Neb. U.C.C. § 3-302 (Reissue 2001) provides that a holder in due course means the holder takes an instrument (1) for value, (2) in good faith, (3) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (4) without notice that the instrument contains an unauthorized signature or has been altered, (5) without notice of any claim to the instrument described in Neb. U.C.C. § 3-306 (Reissue 2001), and (6) without notice that any party has a defense or claim in recoupment described in Neb. U.C.C. § 3-305(a) (Reissue 2001).

Here, Skyline does not meet all of the requirements to qualify as a holder in due course. Despite the language of the assignment, it does not appear that Skyline paid value for the note; rather, as evidenced by the language of the settlement agreement, the consideration was paid by Walker, and upon such payment, FSB agreed to assign the note to Skyline. In addition, in taking the note, Skyline had notice that the instrument was overdue, because Walker and his wife are the only members of Skyline and they both signed the release which recognized the default of the note. Therefore, although Skyline is the present holder of the note, it is not a holder in due course.

[19] Raynor argues that because Skyline does not qualify as a holder in due course, it is subject to any defenses he could have asserted against FSB, and we agree. Unless one has the rights of a holder in due course, he is subject to all the defenses of any party which would be available in an action

on a simple contract. See *S.I.D. No. 32 v. Continental Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983). See, also, § 3-305. This would include the defense of set-off. See *Davis v. Neligh*, 7 Neb. 78 (1878) (stating that holder not in due course takes note subject to any right of set-off which maker had against any prior holder). See, also, Neb. U.C.C. § 3-601 (Reissue 2001) (limiting effectiveness of discharge of obligation of party to holder in due course of instrument without notice of discharge); § 3-605, comment 3 (using hypothetical stating partial payment by one borrower reduces obligation of coborrower).

[20-23] Furthermore, in a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position he would have occupied if the contract had been performed, that is, to make the injured party whole. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). As a general rule, a party may not have double recovery for a single injury, or be made "'more than whole'" by compensation which exceeds the actual damages sustained. *Id*. at 516, 576 N.W.2d at 825. Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had. *Id*. Thus, where the plaintiff has received satisfaction from a settlement with one defendant for injury and damages alleged in the action, any damages for which a remaining defendant would be potentially liable must be reduced pro tanto. See *id*.

Accordingly, in the present case, because Skyline is not a holder in due course, it is subject to any defense Raynor could assert against FSB in a simple contract case. In such a case, Raynor would have a defense against FSB that any amount for which he is liable on the note must be reduced pro tanto by the amounts FSB already received in settling the claims for nonpayment of the note from Walker, Brazier, Herz, and/ or Hansen. FSB is not allowed double recovery from multiple defendants for the same claim as to the note, and therefore, Raynor is liable only for the amount remaining on the note

after subtraction of the amounts FSB received from the settling defendants. Therefore, we reverse the award of damages entered in favor of Skyline against Raynor and remand the cause for recalculation of the remaining balance due on the note.

### (b) Skyline Sustained No Injury

Raynor contends that the judgment entered against him was unconstitutional, because Skyline sustained no legally cognizable injury. In other words, he claims that Skyline was not the real party in interest. We do not agree.

[24,25] Subject to an exception not relevant here, every action must be prosecuted in the name of the real party in interest. Neb. Rev. Stat. § 25-301 (Reissue 2016). To determine whether a party is a real party in interest, the focus of the inquiry is whether that party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. *Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999).

[26-28] As a general rule, an assignment is a transfer vesting in the assignee all of the assignor's rights in property which is the subject of the assignment. *Id*. The assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf, without the name of the assignor. Neb. Rev. Stat. § 25-302 (Reissue 2016). An assignee may recover the full value of an assigned claim regardless of the consideration paid for the assignment. *Eli's, Inc. v. Lemen, supra*.

In the instant case, FSB assigned to Skyline all of its rights conferred by the terms of the promissory note and term loan agreement which are the subject of this action. The cause of action upon which judgment was entered against Raynor, FSB, or Skyline alleged that Raynor signed the FSB note, the note was in default, and Raynor failed to satisfy the debt. As the assignee of FSB's right to collect on the loan, Skyline was permitted to maintain an action against Raynor and pursue

any rights that FSB had to recover on the note. Although lack of consideration is a factor in Skyline's becoming a holder in due course, it does not void the assignment. As a result, we find no merit to this argument.

### (c) Unconstitutional Windfall
### in Favor of Skyline

Raynor also argues that the award in favor of Skyline was an unconstitutional windfall for Skyline because the district court refused to consider the settlements of Walker, Brazier, Hansen, and Herz. We agree. As set forth above, Skyline was not a holder in due course. It was therefore allowed to collect only the remaining balance on the note. The district court should have taken into consideration the settlement amounts paid by Walker, Brazier, Hansen, and Herz. As stated above, we remand the cause for recalculation of the unpaid balance.

### (d) Certificates of Authority

Raynor argues that the LLCs were dissolved before this action was commenced and never had certificates of authority to do business in Nebraska. Thus, he claims, they have no standing as plaintiffs in Nebraska courts under Neb. Rev. Stat. § 21-162(a) (Reissue 2012).

The cause of action upon which judgment was entered against Raynor was the claim of FSB, later assigned to Skyline. The LLCs are not the plaintiffs with respect to the claim at issue in Raynor's argument. In ruling on this claim, the district court found that judgment should be entered on the FSB note in favor of Skyline. Therefore, whether the LLCs having standing as plaintiffs in a Nebraska court has no bearing on Raynor's liability to Skyline.

### (e) Inconsistent Positions on
### Enforceability of FSB Note

Raynor claims that initially Walker and the LLCs argued that the FSB note was unenforceable for various reasons, but once they settled and became plaintiffs, they took an opposite

position. He argues that the assertions Walker and the LLCs made in their early pleadings constitute judicial admissions and that they should be estopped from asserting an inconsistent position now.

[29] As discussed above, neither Walker nor the LLCs are the plaintiffs in the relevant cause of action against Raynor. It is FSB by way of Skyline that is asserting the enforceability of the note. Thus, Walker's and the LLCs' positions with respect to the note are irrelevant to our analysis as to whether judgment was erroneously entered against Raynor. Furthermore, admissions made in superseded pleadings are no longer judicial admissions, but, rather, simple admissions. *Cook v. Beermann*, 202 Neb. 447, 276 N.W.2d 84 (1979). We therefore reject this argument.

### 5. Sole Basis Stipulation

Raynor argues that the district court's judgment was contrary to the parties' stipulation that the sole basis for seeking recovery against him was his expressed intent to assist Herz. We understand this stipulation to be the parties' recognition that Raynor was not an owner or member of the LLCs at the time the FSB note was signed nor was he personally liable on the Five Points Bank note. The dispute appears to arise out of whether Raynor's intended assistance to Herz is sufficient consideration to support the FSB note.

[30-32] Generally, there is sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. *Kissinger v. Genetic Eval. Ctr.*, 260 Neb. 431, 618 N.W.2d 429 (2000). What that benefit and detriment must be or how valuable it must be varies from case to case. It is clear, however, that even "'a peppercorn'" may be sufficient. *Id*. at 439, 618 N.W.2d at 436. A benefit need not necessarily accrue to the promisor if a detriment to the promisee is present, and there is a consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether or not there is

any actual loss or detriment to him or actual benefit to the promisor. *Id*. For the purpose of determining consideration for a promise, the benefit need not be to the party contracting, but may be to anyone else at the contracting party's procurement or request. *Id*.

In the present case, a detriment to the promisee is present: FSB issued a loan to the LLCs, a legal act which it was not bound to do. Raynor argues that he, as the promisor, did not receive a benefit from the loan because he was not an owner of the LLCs at the time of the loan and was not personally liable on the Five Points Bank loan. There is no requirement, for purposes of consideration, that Raynor personally received a benefit; his stated intention to assist Herz is sufficient consideration, because Herz received a personal benefit via the loan proceeds. Accordingly, this argument lacks merit.

## VI. CONCLUSION

We conclude that the district court abused its discretion in declining to enter default judgment against Probandt on the fraud/misappropriation cause of action, and we remand the cause to the district court with directions to enter a default judgment against Probandt in the amount of $2,184,530.

We find no error in the decision to enter judgment in favor of Skyline against Raynor. However, the district court erred in failing to award a credit against the judgment for the amounts received in settlement, and we remand the cause for recalculation of this amount.

Affirmed in part, and in part reversed
and remanded with directions.