JOSEPH MANDOLFO AND NANCY MANDOLFO, HUSBAND AND WIFE,
APPELLEES, V. JOHN P. CHUDY, AN INDIVIDUAL, APPELLANT.
564 N.W.2d 266

Filed June 10, 1997. ⁀ No. A-96-557.

Frederick S. Cassman, of Abrahams Kaslow & Cassman, for appellant.

Jonathan Nash, Jr., and Robert M. Slovek, of Kutak Rock, for appellees.

IRWIN, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

The issue in this case is whether the plaintiffs-appellees, Joseph Mandolfo and Nancy Mandolfo, two of six coguarantors of a $325,000 promissory note, having received an assignment of said note and its guaranties, may recover the entire principal sum and accrued interest from the defendant-appellant, John P. Chudy, also a coguarantor, or is the Mandolfos' recovery from Chudy limited to Chudy's one-sixth pro rata share of the principal and interest due on the note. In short, does the doctrine of equitable contribution limit the Mandolfos' recovery.

## FACTUAL BACKGROUND

In August 1986, a limited partnership known as L A Partners was formed in Omaha, Nebraska. As a real estate investment, L A Partners decided to purchase the Logan Building, containing office and apartment space. At issue in this case are two promissory notes which were utilized in financing the acquisition of this structure.

The first promissory note, executed and delivered by L A Partners to American Investments, Inc. (American), was for $325,000. This note, contained within one document, was secured by the individual guaranties of the Mandolfos, David Barton, LeRoy Bower, and Jean M. Bower (the Mandolfo-Bower-Barton guaranty). Chudy executed a separate guaranty on this note, and unlike the others, it was subject to certain conditions, which, if met, would operate as a release of his individual guaranty. At trial, Chudy admitted that the conditions had not been met and that his guaranty remained in full force and effect. Both guaranties were separate and distinct instruments with each guaranteeing the entire principal amount of $325,000.

The second note involved a promise to pay $90,000, executed and delivered by L A Partners to Logan Development Limited

Partnership (Logan). As security on this note, Joseph Mandolfo, Barton, and LeRoy Bower executed and delivered separate written personal guaranties of payment. On September 2, 1988, L A Partners defaulted on the $90,000 note and demand for payment was made upon Joseph Mandolfo, LeRoy Bower, and Barton. On February 16, 1993, Logan executed and delivered to Chudy an assignment of all of its right, title, and interest in the $90,000 note and the individual guaranties. The pretrial order stipulated and the Mandolfos concede that there is due and owing to Chudy the principal sum of $90,000, together with accrued interest at the rate of 12 percent per annum from June 2, 1988. The district court found that the total amount owed to Chudy by the Mandolfos, calculating interest from September 2, 1988, to December 27, 1995, was $169,032.44. There is no claim that this is not correct. Hereafter, we refer to the $169,032.44 as Chudys "stipulated offset."

The property did not do well financially for L A Partners. In addition to defaulting on the $90,000 note, L A Partners defaulted on the $325,000 note to American on or about June 30, 1989. Demand for payment was made upon each of the six guarantors. The Mandolfos made a payment on their guaranty about October 6, 1989, when they paid $13,308.50 to be applied "to the loan of L.A. Partners." According to the Mandolfos and the First American Savings Bank, this payment was made to reduce the Mandolfos' personal guaranty and was not to be construed as a payment for the L A partnership. In October 1989, the Mandolfos began negotiating with First American Savings Bank (successor entity of American and which we shall also designate as American) to purchase the $325,000 note. This transaction was completed on October 20, 1989, and was viewed by both parties as a "purchase" of the note rather than "payment" of it. The evidence shows that American and the Mandolfos specifically undertook to structure and design this transaction as a purchase and assignment of the note, rather than as payment of the note. The Mandolfo-Bower-Barton guaranty as well as the Chudy guaranty were assigned to the Mandolfos as part of the "purchase."

## PROCEDURAL BACKGROUND

Pursuant to the assignment from American and in accordance with the terms of the $325,000 note and the guaranties, the Mandolfos sued Chudy in the district court for Douglas County for payment of the balance, $320,200.64, plus interest from June 30, 1989. Pursuant to the assignment from Logan and in accordance with his right to enforce the $90,000 note and Joseph Mandolfo's guaranty, Chudy counterclaimed for payment of the "stipulated offset."

In its order, the district court found that although the Mandolfos had been coguarantors with Chudy on the $325,000 note, entitling the Mandolfos only to a right of contribution from Chudy of a one-sixth pro rata share, their purchase of the note created another and different relationship, that of creditor and guarantor. Therefore, the district court held that the Mandolfos were entitled to recover $310,203.12, the amount they had paid American for the note, from Chudy. The district court also noted that the Mandolfos conceded that Chudy was due a credit of one-third of $310,203.12, representing the Mandolfos' one-third liability on the $325,000 note and accrued interest as a result of their guaranties of the $325,000 note. After the district court denied both parties' motions for a directed verdict, it awarded the Mandolfos $310,203.12, together with interest totaling $211,091.36 (11 percent simple interest per annum as shown on the face of the note, calculated from October 20, 1989, when the Mandolfos "purchased" the note, to December 27, 1995). Against these amounts, the court credited to Chudy the stipulated offset of $169,032.44 as well as $173,764.81, the amount of the Mandolfos' one-third pro rata obligation on their guaranty of the outstanding principal and interest on the $325,000 note. After the math was done, the Mandolfos were awarded judgment against Chudy in the amount of $178,497.23.

Chudy moved for a new trial. The district court overruled this motion on April 25, 1996, and this appeal by Chudy followed.

## ASSIGNMENTS OF ERROR

Chudy argues that the district court erred in holding that the Mandolfos, as creditors, could recover from Chudy the entire

balance and interest due on the note, less the one-third credit and the stipulated offset, and in awarding the Mandolfos prejudgment interest on the balance of $310,203.12.

## STANDARD OF REVIEW

■ The issues in this case present questions of law, in connection with which an appellate court reaches a conclusion independent of the lower court's ruling. *Luedke v. United Fire & Cas. Co.*, 252 Neb. 182, 561 N.W.2d 206 (1997); *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997).

## ANALYSIS

*Recovery as Between Coguarantors.*

■ The issue presented in this case is whether the initial relationship between the Mandolfos and Chudy as coguarantors operates as a matter of law to restrict the Mandolfos, who now claim to be the creditors on the principal debt, to recovery of Chudy's one-sixth pro rata share of the underlying obligation. The issue appears to be one of first impression in Nebraska. We use the law in Nebraska concerning guaranties and contribution, as well as the jurisprudence of other states, to analyze the issue. We apply the law of contribution in this case because, even though the Mandolfos sued as creditors for full repayment on the note, we are not bound in our analysis by the Mandolfos' labels. In *Security Inv. Co. v. State*, 231 Neb. 536, 437 N.W.2d 439 (1989), the Nebraska Supreme Court held that a court must examine and construe a petition's essential and factual allegations by which a plaintiff requests relief, rather than the legal terminology utilized in the petition or form of pleading.

■ In general, a guarantor may not deal with a creditor or guarantee in such a manner as to profit by the transaction to the detriment of a coguarantor. 38A C.J.S. *Guaranty* § 128 (1996). It has been held, however, that a guarantor of a note representing a principal indebtedness is not necessarily precluded from purchasing such note, notwithstanding the existence of coguarantors. *Id.* Thus, the "purchase" of the $325,000 note by the Mandolfos is a recognized and approved transaction under the law of guaranty. But the Mandolfos' ability to collect the entire note, minus the Mandolfos' one-third share, against one coguar-

antor is not as well recognized. The Supreme Court in *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 59, 22 N.W.2d 403, 410 (1946), held:

> "Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. The same doctrine applies, and the same remedy is given, between all those who are jointly, or jointly and severally, liable on contract or obligation in the nature of contract. . . ."

In determining the amount that can be recovered when contribution is sought from a coguarantor, the court in *Marshall* stated: " 'A . . . co-obligor . . . is entitled to no more by way of contribution than will put him on an equality of loss with others in view of his share of the obligation undertaken. This is true even though he obtains an assignment from the creditor . . . .' " *Id.* at 61, 22 N.W.2d at 410-11. The Mandolfos argue that by purchasing and taking assignment of the promissory note, they are entitled to a greater recovery from Chudy by virtue of their new status as purchasers and assignees of the note rather than as mere coguarantors. The Mandolfos contend that one of the rights they acquired by assignment was the right to enforce the joint and several liability of the coguarantors of the note. Therefore, the Mandolfos maintain that they can proceed against any one guarantor for the entire amount due. While we recognize that Chudy's guaranty made him jointly and severally liable to American, we believe that to make him jointly and severally liable to the Mandolfos, who, despite being assignees of American, started as coguarantors with Chudy on the principal debt of $325,000, would be to ignore the basic tenets of guaranty law as set forth in *Marshall*.

The Mandolfos attempt to distinguish the *Marshall* case by arguing that the *Marshall* holding came before Nebraska adopted the Uniform Commercial Code. The Mandolfos assert that because Neb. U.C.C. § 3-203(b) (Reissue 1992) provides in

part, "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course," the *Marshall* holding and the U.C.C. are inconsistent. The Mandolfos contend that the U.C.C. controls when there is an inconsistency between it and the common law of the state, citing *Trinidad Bean & Elev. Co. v. Frosh*, 1 Neb. App. 281, 494 N.W.2d 347 (1992). The Mandolfos, as purchasers and assignees of the note, have every right to recover the full amount of the note from L A Partners, the original debtor. However, in this lawsuit, they are attempting to recover against a coguarantor based on his individual guaranty, which we see as a different matter entirely. The limitation upon the Mandolfos' recovery against a coguarantor does not conflict with their rights under the U.C.C. to enforce the note against L A Partners. The Mandolfos also attempt to distinguish *Marshall* because it involved a judgment debtor suing a judgment debtor; whereas, this case involves creditors-assignees suing a coguarantor.

■ The labels do not operate to distinguish *Marshall*, because as between the Mandolfos and Chudy, the Mandolfos and Chudy started as coguarantors. The fact that the Mandolfos attempted to maneuver themselves into a different position by becoming the creditors does not erase their coguarantor status with Chudy. At the heart of the matter is the fact that the Mandolfos' action in voluntarily buying the note from American does not affect or expand Chudy's liability as a coguarantor. *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946), teaches that one coguarantor cannot expand the liability of another coguarantor by taking an assignment of the underlying debt, absent proof of insolvency of other guarantors.

We find it helpful to briefly look to other jurisdictions for further guidance on this issue. In *Estate of Frantz v. Page*, 426 N.W.2d 894 (Minn. App. 1988), the creditor bank assigned its rights and powers under the note, mortgage, and guaranties to the estate-coguarantor after receiving payment of the balance of an outstanding note. The estate, as creditor-assignee, brought an action against fellow guarantors for the amount paid on the note minus the net value of some property received. The defendant,

a coguarantor, argued that the estate could only sue him for a pro rata contribution, not the entire amount paid on the note. The court, while holding that the estate could enforce the note and guaranties as creditors against the joint and severally liable guarantors, remanded with instructions to "reopen the record to take evidence on the ability of each of the guarantors to respond to the debt and then to apply the law of contribution in determining the estate's proportionate liability." *Id.* at 902. The effect of the court's remand was to limit the liability of the coguarantors to their pro rata share, absent proof of the inability of a coguarantor to pay its share of the debt.

In *Weitz v. Marram*, 34 Md. App. 115, 366 A.2d 86 (1976), the appellant, being one of seven coguarantors, purchased and received an assignment from a bank of a $60,000 note and guaranty. The appellant contended that as assignee of the bank, he acquired all rights possessed by the bank under the guaranty agreement and was thus entitled to recover judgment for the full amount against the appellee, uninfluenced by the circumstance that the appellant was also one of seven guarantors who executed the guaranty assigned to him. The Court of Special Appeals of Maryland affirmed the trial court's finding that the appellant was entitled to no more than the appellee's contributory share of the obligation, absent proof of insolvency of other coguarantors.

In *Curtis v. Cichon*, 462 So. 2d 104 (Fla. App. 1985), a coguarantor on a promissory note and his wife purchased a note and received an assignment thereof. They then brought suit against the other two guarantors, seeking the full amount owed on the note based upon their new status as assignees of the note. The court rejected the appellants' contention that by purchasing the promissory note and taking an assignment thereof, they were entitled to a greater recovery by virtue of their status as assignees rather than as coguarantors.

Finally, in *Koeniger v. Lentz*, 462 So. 2d 228 (La. App. 1984), a continuing guarantor paid, in large part, the principal debts he and the respondents had guaranteed. By mutual agreement between the guarantor and the creditor bank, the guarantor was subrogated to all rights of the bank and sued on the original notes and guaranties, demanding from his coguarantors the

full amount of the principal and interest. The guarantor argued that another Louisiana decision, *Fox v. Corry*, 149 La. 445, 89 So. 410 (1921), stood for the proposition that a cosurety could buy, rather than pay, the principal obligation and thereby become entitled to the original creditor's rights against the other cosureties. The Court of Appeal of Louisiana held that to the extent *Fox* suggested this, it was not to be followed and concluded, "The basic rule as between sureties is that 'the surety who has satisfied the debt, has his remedy against the other sureties in proportion to the share of each . . . .' " 462 So. 2d at 229. *Koeniger, supra*, addresses one of the Mandolfos' main arguments, which is that because they "purchased" the note, rather than paying the debt, they are entitled to more than an aliquot share from Chudy.

There is much ado about the fact that an independent attorney was brought in to structure the transaction between American and the Mandolfos as a purchase of the note rather than payment of it. The evidence reveals that the Mandolfos paid $310,203.12 for a note which had $310,203.12 due on it. Nonetheless, the Mandolfos strenuously assert that this was a "purchase" of the note, not payment of the debt. The Mandolfos cite *First Sec. Bank v. Banberry Development*, 786 P.2d 1326 (Utah 1990), for the proposition that the difference between purchasing a debt and paying it consists not in what is done or how it is done but in the intention with which the consideration is paid and accepted. It is clear that American and the Mandolfos "intended" that this be labeled a purchase. But they paid no more than what was due on the note—which was already their legal obligation because of their guarantee—and their payment of the full amount was not compelled but was strictly as a volunteer. Calling it a purchase and hiring a lawyer to draft papers to label the transaction as a purchase does not make it such; the reality is that it is a payment of the debt to American. No matter how many times a farmer calls his cow a horse, it is still a cow. Regardless of labels, be it purchase or payment, cow or horse, the Mandolfos are still limited in their rights against Chudy by the law which operates between coguarantors.

It has been held that in determining the shares for contribution, a guarantor who is insolvent is to be excluded

from consideration. 38A C.J.S. *Guaranty* § 129 (1996). As a general rule, it is necessary to collect equally and ratably from guarantors who are solvent, and if some of the guarantors are insolvent, those who are solvent must contribute their portion of the amount which the insolvent guarantors would have been required to pay. *Id.* There must, however, be a judicial determination of insolvency before a coguarantor may be required to contribute on account of the alleged insolvency of another guarantor. *Id.* The Nebraska Supreme Court in *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 60, 22 N.W.2d 403, 410 (1946), has found this principle to be sound by its holding, " 'If one or more of the co-sureties are insolvent, the plaintiff can in equity obtain a proportionate increase of contribution from the others who are solvent.' " The Mandolfos did not prove the insolvency of the three other coguarantors, Barton, LeRoy Bower, and Jean Bower, and such proof is a prerequisite to requiring Chudy to contribute more than his one-sixth share. Therefore, the relationship between the Mandolfos and Chudy, as coguarantors, when the other three coguarantors had not been proved insolvent, operates as a matter of law to restrict the Mandolfos' recovery to no more than Chudy's pro rata share of the obligation owed by L A Partners to the Mandolfos. That share is one-sixth of $310,203.12 or $51,700.52, plus accrued interest. Against this total, the stipulated offset must be deducted to determine who owes whom and how much.

*Prejudgment Interest.*

The Mandolfos seek to recover "repayment of interest in accordance with the specific terms and conditions of the Note." Brief for appellee at 18. They argue that because the parties contracted for payment of interest, the contract controls, and that the agreed upon interest rate should be enforced. Chudy also seeks interest on his $90,000 counterclaim. Both parties argue that the other is not entitled to interest under the prejudgment interest statute, Neb. Rev. Stat. § 45-103.02 (Reissue 1993), because of failure to comply with the statute. We affirm the district court's decision to calculate interest on the terms of each promissory note rather than under the prejudgment statute, § 45-103.02. In *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166

(1993), the Supreme Court held that in order to receive prejudgment interest, a litigant must strictly comply with § 45-103.02, which allows prejudgment interest to accrue from the date of the plaintiff's first offer of settlement which is exceeded by the judgment when all express statutory conditions for such offer are met. Here, interest is properly calculated on the basis of the terms of the promissory note.

## CONCLUSION

We reverse, and remand with directions to enter judgment in accordance with our conclusion that the Mandolfos' recovery against Chudy is in the amount of $51,700.52, being his one-sixth share of $310,203.12, plus interest calculated at 11 percent per annum from October 20, 1989, to the date of judgment. Against that amount must be the stipulated offset, plus interest calculated at 12 percent per annum from September 2, 1988, to the date of final judgment. This will result in a judgment in favor of Chudy against the Mandolfos.

REVERSED AND REMANDED WITH DIRECTIONS.