JOSEPH MANDOLFO AND NANCY MANDOLFO,
HUSBAND AND WIFE, APPELLEES, V.
JOHN P. CHUDY, AN INDIVIDUAL, APPELLANT.

573 N.W. 2d 135

Filed February 6, 1998.   No. S-96-557.

Frederick S. Cassman, of Abrahams Kaslow & Cassman, for appellant.

Robert M. Slovek and Jonathan Nash, Jr., of Kutak Rock, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

## STATEMENT OF CASE

This is an action by Joseph Mandolfo and Nancy Mandolfo, two of six coguarantors of a $325,000 promissory note, who purchased an assignment of the note and guaranty, and commenced suit against John P. Chudy, one of the other four coguarantors, to recover the entire principal balance of the note and accrued interest.

## SCOPE OF REVIEW

The issues in this case present questions of law, in connection with which an appellate court reaches a conclusion independent of the lower court's ruling. *McAllister v. Department of Corr. Servs., ante* p. 910, 573 N.W.2d 143 (1998); *Brams Ltd. v. Elf Enters., post* p. 932, 573 N.W.2d 139 (1998).

## FACTS

L A Partners, a limited partnership consisting of limited partners LeRoy Bower and Joseph Mandolfo and general partner Synvestor Properties, Ltd., purchased a building in Omaha. David Barton was the president of Synvestor Properties. The purchase was financed in part by loans of $325,000 from American Investments, Inc. (American), and $90,000 from Logan Development Limited Partnership (Logan).

The $325,000 note was secured by a document containing the individual guaranties of Joseph Mandolfo, Nancy Mandolfo, Barton, LeRoy Bower, and Jean Bower. On the same date, Chudy executed a separate guaranty of the note containing certain conditions which, if met, would operate as a release of his individual guaranty. It is undisputed that those conditions have not been met and that Chudy's guaranty remained in full force and effect. Both guaranties were separate and distinct instruments, and each guaranteed the entire principal amount of the $325,000 note.

The $90,000 note was secured by separate written guaranties of Joseph Mandolfo, Barton, and LeRoy Bower. On September 2, 1988, L A Partners defaulted on the $90,000 note, and Logan made demand for payment upon Mandolfo, Barton, and LeRoy Bower. On February 16, 1993, Logan executed and delivered to Chudy an assignment of all its right, title, and interest in the $90,000 note.

Around June 30, 1989, L A Partners defaulted on the $325,000 note to American. Demand for payment was made on each of the partners, and on October 6, First American Savings Bank (First American) (successor entity of American) received payment of $13,308.50 from Joseph Mandolfo to be applied to the loan of L A Partners. The payment was made expressly to reduce Joseph Mandolfo's personal guaranty on the loan and was not to be construed as a payment from L A Partners.

On October 20, 1989, the Mandolfos negotiated an agreement with First American to purchase the $325,000 note and refinanced the loan by personally borrowing from First American an amount sufficient to repay the outstanding balance of $310,203.12. Pursuant to the agreement, on October 20, First American assigned to the Mandolfos all its right, title, and inter-

est in the note and its accompanying guaranties. First American and the Mandolfos structured the transaction as a purchase and assignment, rather than a payment of the note.

Pursuant to the assignment, the Mandolfos sued Chudy for payment of the entire balance of the note, which they alleged to be $320,000, plus interest from June 30, 1989. According to his rights under the assignment of the $90,000 note from Logan, Chudy counterclaimed against Joseph Mandolfo, a guarantor of the note, for payment.

The district court held that although the Mandolfos had been guarantors with Chudy on the $325,000 note, which would entitle them to a contribution from Chudy of a one-sixth pro rata share only, the Mandolfos' purchase of the note created a creditor-guarantor relationship, and that minus an offset for their one-third liability, the Mandolfos were entitled to recover from Chudy $310,203.12 plus simple interest at 11 percent per annum from October 20, 1989, which totaled $211,091.33. The court thereby found that Chudy's liability on the $325,000 note was $521,294.48 minus the Mandolfos' one-third share of $173,764.81. The court, pursuant to Chudy's counterclaim, credited Chudy with $169,032.44 principal and interest, and after the offsets, judgment was entered in favor of the Mandolfos for $178,497.23 together with the costs of the action.

Chudy's motion for new trial was overruled, and he appealed. The Nebraska Court of Appeals reversed the judgment of the district court, holding that despite the fact that the Mandolfos and First American labeled the transaction a "purchase," the Mandolfos were limited by the law governing guarantors, which limited their recovery against coguarantors to no more than a coguarantor's pro rata share of the obligation (increased proportionately only in the case that the other guarantors were proved insolvent). See *Mandolfo v. Chudy*, 5 Neb. App. 792, 564 N.W.2d 266 (1997). We granted the Mandolfos' petition for further review.

## ASSIGNMENT OF ERROR

The Mandolfos assert that the Court of Appeals erred by holding that they could not and did not acquire the rights of

transferees of the $325,000 note as provided by Neb. U.C.C. § 3-203(b) (Reissue 1992).

## ANALYSIS

This case presents an issue of first impression as to whether coguarantors of a promissory note who have purchased an assignment of the note may recover the entire amount of the note from a coguarantor. In *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946), we held that a coguarantor was entitled to no more by way of contribution than would put him on an equality of loss with the other coguarantors in view of his share of the obligation undertaken. We held that this is true even though the coguarantor obtained an assignment from the creditor.

The Mandolfos argue that the transfer of the $325,000 note vested in them the right to enforce the note under the Nebraska Uniform Commercial Code and that pursuant to § 3-203, they can proceed as a creditor, thereby having the right to recover the full amount due on the note from any of the individual guarantors. Neb. U.C.C. § 3-201(1) (Reissue 1980), the predecessor of § 3-203(b), which was in effect at the time of the transfer, provides: "Transfer of an instrument vests in the transferee such rights as the transferor has therein . . . ." The term "instrument" is defined in Neb. U.C.C. § 3-102(e) (Reissue 1980): " 'Instrument' means a negotiable instrument."

The Mandolfos' basic argument is that since our decision in *Exchange Elevator Company* occurred before the adoption of the Uniform Commercial Code, to the extent that our holding in *Exchange Elevator Company* and the Uniform Commercial Code are inconsistent, the later adoption of the code controls. The issue presented is whether § 3-201 changes the law set forth in *Exchange Elevator Company*, which limited the right of a coguarantor on a note to no more by way of contribution " 'than will put him on an equality of loss with others in view of his share of the obligation undertaken. . . .' " See 147 Neb. at 61, 22 N.W.2d at 411. We thus consider whether pursuant to § 3-201, the transferee of a note and guaranty can enforce the guaranty in the same manner that the transferee could enforce the note.

In *Aetna Cas. & Surety Co. v. Nielsen*, 217 Neb. 297, 348 N.W.2d 851 (1984), *overruled on other grounds, First Nat. Bank*

*v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985), we held that a guaranty of a promissory note was not a negotiable instrument and was not governed by article 3 of the Nebraska Uniform Commercial Code because it did not contain an unconditional promise to pay a sum certain and was not payable on demand or at a time certain. See, also, Neb. U.C.C. § 3-104 (Reissue 1980) (defining negotiable instrument). We further explained that the guaranty could not be construed together with the promissory note so as to satisfy the required elements of a negotiable instrument. We conclude that the guaranty by Chudy is likewise not a negotiable instrument.

In other jurisdictions where an assignment was obtained by one of several coguarantors after full payment was made on the note, the courts have overwhelmingly held that recovery against a coguarantor was limited to the coguarantor's contributory share. See, e.g., *Collins v. Throckmorton*, 425 A.2d 146 (Del. 1980); *Curtis v. Cichon*, 462 So. 2d 104 (Fla. App. 1985); *Koeniger v. Lentz*, 462 So. 2d 228 (La. App. 1984); *Weitz v. Marram*, 34 Md. App. 115, 366 A.2d 86 (1976); *Estate of Frantz v. Page*, 426 N.W.2d 894 (Minn. App. 1988). In *Koeniger*, the court specifically rejected an argument that a payment deemed a "purchase" could circumvent the rules of suretyship.

Although the Mandolfos rely upon *Estate of Frantz* for the proposition that as purchasers they are entitled to the original creditor's right to recover the entire amount from any coguarantor, we conclude that *Estate of Frantz* does not support this argument. In that case, the court reaffirmed that a coguarantor is generally not liable for more than his pro rata share of the debt absent an agreement to the contrary.

We therefore conclude that the assignment of the note and its guaranties does not enhance the Mandolfos' rights against Chudy. Although the Mandolfos may proceed as creditors on the promissory note, the assignment does not alter their status as coguarantors of the note. Although § 3-201(1) vests in the transferee any right of the transferor to enforce the instrument, the guaranty under which Chudy's rights are determined is not a negotiable instrument and is not subject to the provisions of § 3-201. Statutes which effect a change in the common law or take away a common-law right should be strictly construed, and

a construction which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it. *Guzman v. Barth*, 250 Neb. 763, 552 N.W.2d 299 (1996).

As correctly determined by the Court of Appeals, the limitation upon the Mandolfos' recovery against a coguarantor does not conflict with their rights under the Uniform Commercial Code to enforce the note against L A Partners. The assignment of the note and the guaranty does not change the Mandolfos' status as coguarantors with Chudy. Therefore, our decision in *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946), is still controlling, and absent proof that one of the other coguarantors is insolvent, the Mandolfos can recover no more than Chudy's pro rata share of the note as determined by the Court of Appeals.

## CONCLUSION

The Mandolfos do not dispute the amount of Chudy's pro rata share as determined by the Court of Appeals. Accordingly, we affirm the decision of the Court of Appeals.

Affirmed.