IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


SCHMIDT V. SPORTSMAN'S GALLERY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


LESLIE L. SCHMIDT, INDIVIDUALLY AND AS TRUSTEE OF THE LES SCHMIDT
REVOCABLE TRUST, APPELLEE AND CROSS-APPELLANT,

V.

SPORTSMAN'S GALLERY, LLC, A NEBRASKA LIMITED LIABILITY COMPANY,
ET AL., APPELLANTS AND CROSS-APPELLEES.


Filed January 4, 2022.    No. A-21-008.


Appeal from the District Court for Red Willow County: DAVID W. URBOM, Judge. Affirmed as modified.

Timothy P. Brouillette, of Brouillette, Dugan, Troshynski & Bellew, P.C., L.L.O., for appellants.

Cindy R. Volkmer, of Kelley, Scritsmier & Byrne, P.C., L.L.O., for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Gothenburg State Bank loaned money to Sportsman's Gallery, LLC, pursuant to three separate promissory notes. The original members of Sportsman's Gallery--Leslie L. Schmidt, Nancy M. Schmidt, C. Douglas Breinig, and Debra A. Breinig--were guarantors on the loans. Sportsman's Gallery ultimately defaulted on the loans, and Gothenburg State Bank notified Leslie, as a guarantor, that it was exercising its right to accelerate the debt pursuant to the promissory notes. Leslie, although no longer a member of Sportsman's Gallery, paid the loans in full and the bank assigned to him the promissory notes.

- 1 -

Leslie filed suit against Sportsman's Gallery and the Breinigs. The district court granted summary judgment in favor of Leslie and against Sportsman's Gallery and the Breinigs on Leslie's claim of breach of the promissory notes and of the guarantor agreement. Leslie was awarded one-half of what he had paid to Gothenburg State Bank, plus accrued interest. The Breinigs and Sportsman's Gallery appealed, and Leslie cross-appealed. Based on the reasons that follow, we affirm as modified.

## II. BACKGROUND

In April 2012, the Schmidts and the Breinigs formed Sportsman's Gallery, a limited liability company. Pursuant to the operating agreement, the Leslie L. Schmidt and Nancy M. Schmidt Revocable Living Trust owned a one-half interest in the company. The Breinigs each individually owned one-fourth of the company. According to Leslie, it was intended that the Schmidts would own one-half of the company and the Breinigs would own one-half of the company.

In the months following the formation of Sportsman's Gallery, Nancy became ill. She died in October 2012. While Leslie, through the trust, continued to own one-half of the company, he "had very little involvement with the business" after Nancy's death. Ultimately, in August 2014, Leslie, acting as trustee, assigned the trust's ownership interest in the company to the Breinigs. According to Leslie, at the time of the assignment, he "was assured by [the Breinigs] that [his] involvement and liability in the business would be over." However, a copy of the written assignment does not specifically indicate any such release of liability. Instead, such documentation indicates that Leslie assigned his interest in Sportsman's Gallery to the Breinigs "[f]or good and valuable consideration."

In May 2012, at a time when the Schmidts (through the trust) and the Breinigs still each owned one-half of the company, Leslie, Nancy, Doug, and Debra individually executed unlimited personal guarantees for any indebtedness Sportsman's Gallery incurred with Gothenburg State Bank. Specifically, the guaranty provided that it was "an absolute unconditional and continuing guaranty of payment of the Indebtedness [of Sportsman's Gallery] and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender." Moreover, the guaranty explained that the guarantors agreed to ensure "the payment and performance of each and every debt, liability and obligation of every type and description which [Sportsman's Gallery] may now or at any time hereafter owe to [Gothenburg State Bank]."

In July 2012, a few months after the Schmidts and the Breinigs signed the guaranty, Sportsman's Gallery executed two promissory notes with Gothenburg State Bank. The first such promissory note (#------11010), was in the principal amount of $64,900. Pursuant to the language of the promissory note, the payment terms were as follows:

> I agree to pay this note on demand, but if no demand is made, I agree to pay this Note in 20 payments. This Note is amortized over 40 payments. I will make 19 payments of $2,128.61 beginning on January 1, 2013, and on the same day in each third month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due on October 1, 2017.

The note further provided for the acceleration of the entire debt upon the failure to make any payment.

The second promissory note executed in July 2012 (#------11020), was in the principal amount of $45,000. The payment terms of this note were similar to the payment terms of the first note:

> I agree to pay this note on demand, but if no demand is made, I agree to pay this Note in 40 payments. I will make 39 payments of $1,475.93 beginning January 1, 2013 and on the same day of each 3rd month thereafter. A single, final payment of the entire unpaid balance of Principal and interest will be due October 1, 2022.

Again, similar to the first note, the second note provided for the acceleration of the entire debt upon the failure to make any payment.

In July 2013, Sportsman's Gallery executed a third promissory note with Gothenburg State Bank. At the time this note was executed, Nancy was deceased, but the trust still owned a one-half interest in the company. This third note (#------12010) permitted Sportsman's Gallery to borrow up to $10,000. Initially, Sportsman's Gallery borrowed $100 under this promissory note. However, pursuant to the terms of the note, the company borrowed an additional $700 and later an additional $9,300, for a total debt of $10,100. The note explained the payment terms as follows:

> I agree to pay this note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning December 28, 2013, then on the same day in each 6th month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due July 1, 2014.

Again, similar to the other two promissory notes, the third note provided for the acceleration of the entire debt upon the failure to make any payment.

On February 5, 2015, 6 months after Leslie assigned his interest in Sportsman's Gallery to the Breinigs, he received a letter notifying him that Sportsman's Gallery had defaulted under the terms of the promissory notes it had executed with Gothenburg State Bank. Sportsman's Gallery owed to the bank $117,497.36. The letter went on to state: "The purpose of this letter is to make demand upon you for payment of the guaranty. In the event that this amount is not paid by you within the next ten (10) days, the Bank will begin collection efforts against both of you and Sportsman's Gallery, LLC." Ultimately, on February 10, Leslie agreed to pay to the bank the entire amount owed by Sportsman's Gallery, which, after calculating the interest due through February 10 totaled $117,532.29. In exchange for Leslie's payment, the bank assigned to him each of the promissory notes previously executed by Sportsman's Gallery.

Exactly 4 years after paying off Sportsman's Gallery's debt, on February 10, 2019, Leslie filed a complaint in the district court naming the Breinigs and Sportsman's Gallery as defendants. In the complaint, Leslie asserted multiple causes of action and theories for relief. He first alleged that the Breinigs and Sportsman's Gallery were liable to him for the total amount he paid to Gothenburg State Bank on the promissory notes plus accrued interest because of Sportsman's Gallery's breach of the terms of the promissory notes and the Breinigs' breach of the terms of the guaranty. He alleged that, in the alternative, the Breinigs were liable to him for at least one-half of the amount he paid to Gothenburg State Bank, as a result of the Breinigs' one-half ownership of

Sportsman's Gallery at the time the promissory notes and guaranty were executed. Leslie also alleged that the Breinigs owed him an unspecified amount of damages due to their breach of the company's operating agreement; their misappropriation of company assets; their breach of fiduciary duties; their engaging in conversion of company assets; and their constructively fraudulent misrepresentations. Leslie also asked the district court to order an accounting of Sportsman's Gallery's currently existing assets and debts.

The Breinigs and Sportsman's Gallery filed an answer in which they generally denied owing Leslie any portion of the amount he paid to Gothenburg State Bank or any other damages. They affirmatively alleged, among other defenses, that Leslie's claims were barred by the relevant statute of limitations. Additionally, the Breinigs and Sportsman's Gallery raised a "counterclaim," asserting that Leslie owed them damages for his "portion of the [the Breinigs' and Sportsman's Gallery's] expense for time and labor in operating the business and payment of rent in excess of $120,000 without any contribution from [Leslie]."

Subsequent to filing their answer and counterclaim, the Breinigs and Sportsman's Gallery filed a motion for summary judgment asking the district court to dismiss the entirety of Leslie's complaint with prejudice. Leslie also filed a motion for summary judgment. In his motion, he asked the district court to award summary judgment in his favor on his claim that both the Breinigs and Sportsman's Gallery breached the terms of the promissory notes and the guaranty. He also asked that the district court dismiss the counterclaim as being filed beyond the relevant statute of limitations.

A hearing was held on the motions for summary judgment in October 2020. At the hearing, the parties offered into evidence the pleadings; answers to discovery requests; and affidavits from the Breinigs, Leslie, and the president of Gothenburg State Bank.

On December 9, 2020, the district court entered an order granting summary judgment in favor of Leslie and against the Breinigs and Sportsman's Gallery on Leslie's claim that the Breinigs and Sportsman's Gallery breached the terms of the promissory notes and the guaranty. In so finding, the district court concluded that the statute of limitations had not passed on this particular claim, because the limitations period did not begin to run until February 5, 2015, the day that Leslie received notification that the bank was exercising its option to accelerate. To the contrary, the district court found that the statute of limitations had run on each of Leslie's other claims and on the Breinigs' and Sportsman's Gallery's counterclaim. As such, the court sustained the Breinigs' and Sportsman's Gallery's motion for summary judgment as to all but Leslie's first cause of action and sustained Leslie's motion for summary judgment as to the counterclaim filed by the Breinigs and Sportsman's Gallery.

The district court entered judgment in favor of Leslie and against the Breinigs and Sportsman's Gallery in the amount of $76,271.96, which equated to one-half of the $117,532.29 paid by Leslie to Gothenburg State Bank plus the interest that had accrued since Leslie's payment. Such interest was calculated using the contracted-for rates in the promissory notes. The district court also ordered the Breinigs and Sportsman's Gallery to pay interest at the judgment rate after December 10, 2020.

The Breinigs and Sportsman's Gallery appeal from the district court's order. Leslie cross-appeals.

### III. ASSIGNMENTS OF ERROR

On appeal, the Breinigs and Sportsman's Gallery assign, restated, that the district court erred in granting Leslie summary judgment on his claims of breach of the promissory notes and breach of the guarantor agreement and that the district court erred in finding that their counterclaim was barred by the relevant statute of limitations.

On cross-appeal, Leslie assigns and argues that the district court erred in (1) failing to find that Sportsman's Gallery was liable for the entire debt to Gothenburg State Bank pursuant to the promissory notes; (2) treating him as a coguarantor rather than as a creditor with regard to his claim of breach of the guaranty; (3) finding that the Breinigs owed him only one-half of the amount he paid on the promissory notes, rather than two-thirds; (4) calculating the amount of interest owed to him; and (5) finding that the statute of limitations barred his claims for indemnification and unjust enrichment as to the Breinigs.

### IV. STANDARD OF REVIEW

Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Village of Filley v. Setzer*, 22 Neb. App. 575, 858 N.W.2d 258 (2014).

### V. ANALYSIS

#### 1. APPEAL

##### (a) Statute of Limitations on Claim for Breach
##### of Promissory Notes and Guaranty

In the district court's December 9, 2020, order, it found that Leslie's claim for breach of the promissory notes and the guaranty was filed within the relevant statute of limitations period. Specifically, the court found that the statute of limitations period was 5 years and that such period began to run on February 5, 2015, when Gothenburg State Bank indicated to Leslie its intent to accelerate payment of the debt which was owed pursuant to the promissory notes. Because Leslie filed his claim approximately 4 years later, on February 10, 2019, the filing was within the 5-year statute of limitations period.

On appeal, the Breinigs and Sportsman's Gallery challenge the district court's determination that Leslie filed his claim for breach of the promissory notes and the guaranty within the statute of limitations. While they agree with the district court's finding that the relevant statute of limitations period is 5 years, they disagree with the court's determination of the date when the period began to run. The Breinigs and Sportsman's Gallery contend that, at the latest, the statute of limitations period began to run on July 1, 2013, when the final promissory note was executed by Sportsman's Gallery. Thus, the statute of limitations period would have ended on July 1, 2018, or more than 7 months before Leslie filed his claim.

Upon our review, we agree with the district court that Leslie filed his claim for breach of the promissory notes and the guaranty within the statute of limitations. Neb. Rev. Stat. § 25-205 (Reissue 2016), provides, in relevant part, that an action upon any agreement, contract, or promise in writing must be commenced within 5 years of accrual of a cause of action. The contracts at issue

in the present case are the three promissory notes executed by Sportsman's Gallery and the guaranty signed by the Schmidts and the Breinigs.

In their brief on appeal, the Breinigs and Sportsman's Gallery assert that the promissory notes constituted "demand notes," whereby the entire debt was due and owing whenever Gothenburg State Bank demanded payment. However, our careful review of the language of these promissory notes reveals that they are actually installment contracts with an optional acceleration clause. The promissory notes are installment contracts because the agreements' payment provisions obligated Sportsman's Gallery to make regular installment payments to Gothenburg State Bank. The promissory notes also contained an optional acceleration clause, which clause granted the bank, upon Sportsman's Gallery's default, and the bank's providing adequate notice, to accelerate the debt and declare the entire amount immediately due. Notably, if the promissory notes were payable on demand, as alleged by the Breinigs and Sportsman's Gallery, then there would be no practical need for the acceleration clause. We also note that the promissory notes contain a specific maturity date, which further demonstrates that they are not demand notes as suggested by the Breinigs and Sportsman's Gallery. See *Erickson v. Newell*, 183 Neb. 641, 163 N.W.2d 286 (1968) (reiterating that instruments which are payable on demand include those in which no time for payment is stated.)

Our determination that the promissory notes are installment contracts with an acceleration clause is significant because this affects when the five-year statute of limitations began to run. With regard to installment contracts, the Nebraska Supreme Court has previously held that in the absence of a contractual provision allowing acceleration, where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due. *City of Lincoln v. Hershberger*, 272 Neb. 839, 725 N.W.2d 787 (2007). However, when a contract contains an option to accelerate, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that the creditor has elected to exercise the option. *Id*.

Here, Gothenburg State Bank sent Leslie a letter on February 5, 2015, informing him that Sportsman's Gallery had defaulted on its debt and that the bank had decided to exercise its right to accelerate the whole debt such that it was immediately due and payable. As such, the statute of limitations began to run on Leslie's claim for breach of the promissory notes on February 5, 2015, the date the bank sent its letter to Leslie indicating its intent to exercise its right to accelerate. We note that February 5, 2015, is also the date upon which the statute of limitations began to run on the guaranty. Although the Breinigs are guarantors who are asserting a statute of limitations defense, the same rules apply equally to the original debtor and the guarantor of the same debt. See *City of Lincoln v. Hershberger, supra*. Under these circumstances, a guarantor steps into the shoes of the original debtor and has all the same obligations and defenses of the original debtor. *Id*.

Leslie filed his complaint on February 10, 2019, 4 years and 5 days after he received the bank's letter indicating its intent to accelerate the debt. Accordingly, Leslie filed the complaint within the 5-year statute of limitations provided by § 25-205. The Breinigs' and Sportsman's Gallery's assertions to the contrary are without merit.

### (b) Debt Added After Guaranty Was Signed

As a part of their assertion that the district court erred in failing to dismiss Leslie's claim of breach of the guaranty, the Breinigs briefly argue on appeal that they should not be held liable for any debt that was acquired by Sportsman's Gallery after the guaranty was signed. And, because all three promissory notes were executed after the guaranty was signed in May 2012, they argue they should not be liable for any of the debt associated with those promissory notes. Specifically, the Breinigs assert, "[A]dding $125,000 worth of debt after the personal guarant[y] was signed when there was no debt according to the evidence, substantially changes the liability of the parties, without their consent." Brief for appellants at 11.

We find no support for the Breinigs' assertion. The language of the guaranty specifically requires the Schmidts and the Breinigs to pay "every debt, liability, and obligation of every type and description which [Sportsman's Gallery] may now or at any time hereafter owe to [the bank.]" By signing the guaranty, the Breinigs agreed to guaranty both present and future debts of Sportsman's Gallery. They cannot now claim that the addition of new debt after the signing of the guaranty somehow altered their liability under the agreement.

### (c) Statute of Limitations for Counterclaim

In its December 2020 order, the district court concluded that the Breinigs' and Sportsman's Gallery's counterclaim for rent and other expenses incurred in operating the business was barred by the relevant statute of limitations. The court found that because there was no written agreement between the parties as to the allocation of such expenses, that the statute of limitations was 4 years. The court next found that because Leslie had assigned all of his interest in Sportsman's Gallery to the Breinigs on August 27, 2014, that, at the latest, the statute of limitations would have begun to run on that day. However, the Breinigs and Sportsman's Gallery did not file their counterclaim until September 20, 2019, more than 5 years later.

The Breinigs and Sportsman's Gallery assign as error the district court's decision finding their counterclaim to have been filed outside of the statute of limitations period. However, their argument in support of this assigned error is insufficient. They do not explain how the court erred in its determination that the statute of limitations barred the counterclaim. Specifically, they do not argue that the statute of limitations was longer than the 4-year period found by the district court nor do they assert that the limitations period began to run at a different time than that found by the court. Essentially, their argument consists of a few sentences which do nothing more than restate the assignment of error regarding their counterclaim. These statements do not constitute the required argument in support of the assigned error. Errors that are assigned but not argued will not be addressed by an appellate court. See *Livingston v. Metropolitan Utilities Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005).

### 2. CROSS-APPEAL

### (a) Amount of Sportsman's Gallery's Liability

In the district court's order, judgment was entered in favor of Leslie and against the Breinigs and Sportsman's Gallery in the amount of $76,271.96, which the district court explained was one-half of the amount Leslie paid to Gothenburg State Bank in order to pay off the promissory

notes executed by Sportsman's Gallery, plus interest which had accrued from the date of Leslie's payment. On cross-appeal, Leslie asserts that the district court erred in finding that Sportsman's Gallery was only liable to him for one-half of the payoff amount. We find Leslie's assertion to have merit.

Sportsman's Gallery was the original debtor on the promissory notes. As such, it was obligated to pay the entirety of its debt to Gothenburg State Bank. Sportsman's Gallery defaulted on its obligation to pay, which gave rise to Leslie's obligation to pay the debt of Sportsman's Gallery pursuant to the terms of the guaranty. After Leslie paid off the debt, Gothenburg State Bank assigned to him the promissory notes. Pursuant to Leslie's current ownership of the promissory notes in addition to his payment of Sportsman's Gallery's debt, Sportsman's Gallery is liable to Leslie for the full amount that he paid to Gothenburg State Bank plus accrued interest. See *Mandolfo v. Chudy*, 5 Neb. App. 792, 564 N.W.2d 266 (1997) (appellants, as purchasers and assignees of note, have every right to recover full amount of note from original debtor).

Because Sportsman's Gallery is liable to Leslie for the entire amount of the debt he paid to Gothenburg State Bank, we modify the district court's order to provide that judgment is entered in favor of Leslie and against Sportsman's Gallery in the amount of $152,544.62. Such amount was computed based upon the amount Leslie paid on February 10, 2015, to Gothenburg State Bank ($117,532.29) plus the amount of interest owed from February 10 through the date of the district court's order, based upon the contracted for rates in the promissory notes ($35,012.33).

(b) Leslie is Coguarantor of Promissory Notes

In his brief on cross-appeal, Leslie argues that the Breinigs are also liable to him for the entire amount he paid to Gothenburg State Bank on the promissory notes, rather than just for one-half of the amount. Leslie bases his argument on the fact that he assigned his interest in Sportsman's Gallery to the Breinigs prior to the time he paid off the debt on the promissory notes. Leslie explains, "[B]ecause [he] assigned his interest in Sportsman's [Gallery] over to the Breinigs prior to his purchase of the notes, he was not in a similar position as the Breinigs and, therefore, he should be treated as a creditor of the [Breinigs] and not simply a coguarantor." Brief for cross-appellant at 24. Leslie's assertion is simply not supported by our record.

Language contained within the guaranty provides as follows:

This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender[.]

We first note that the promissory notes were executed in July 2012 and July 2013, prior to Leslie assigning his interest in Sportsman's Gallery to the Breinigs in August 2014. So, to the extent that this assignment in any way affected Leslie's future liability as a guarantor for Sportsman's Gallery's debts, he would still have been liable for Sportsman's Gallery's default on the existing promissory notes. The language of the guaranty clearly provides that a written revocation of liability will not be effective as to already existing indebtedness.

Moreover, there is no evidence in our record to suggest that Leslie or the Breinigs ever provided Gothenburg State Bank written notice that Leslie would no longer be liable as a guarantor. While Leslie asserted in his affidavit that the Breinigs "assured" him that his liability with regard to the business was over after he assigned his interest to them, the actual written assignment does not reflect such a waiver of liability. In fact, Leslie appears to concede in his appellate brief that no written notice of his revocation of the guaranty was provided to the bank: "[Leslie] acknowledged his guaranty of the notes was not revoked or removed." Brief for cross-appellant at 23.

Leslie signed the guaranty as an individual, not as a member or owner of Sportsman's Gallery. As such, his liability under the guaranty was distinct from his trust's membership or ownership of the company. Leslie remained a coguarantor on the promissory notes even after he assigned his interest in the company to the Breinigs.

(c) Proportionate Shares of Coguarantors

The Supreme Court has explained that where an assignment of a promissory note was obtained by one of several coguarantors after full payment was made on the note, recovery against a coguarantor is limited to the coguarantor's contributory share. See *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998). Here, the district court determined that there were four guarantors, the Schmidts and the Breinigs, and that, as such, the Breinigs owed Leslie one-half of the full payment he made on the promissory notes. On cross-appeal, Leslie asserts that because Nancy Schmidt died shortly after signing the guaranty, that there were only three remaining coguarantors at the time of his payment to Gothenburg State Bank and he should be awarded two-thirds of the full payment he made on the promissory notes.

As a general rule, it is necessary to collect equally and ratably from guarantors who are solvent, and if some of the guarantors are insolvent, those who are solvent must contribute their portion of the amount which the insolvent guarantors would have been required to pay. See *Mandolfo v. Chudy*, 5 Neb. App. 792, 564 N.W.2d 266 (1997). In this case, Leslie provided evidence to demonstrate that Nancy Schmidt died in October 2012. No other party contested the fact or the timing of Nancy's death. As a result of Nancy's death, she is not currently capable of making payments to a creditor, just as if she was insolvent.

However, despite Nancy's death after signing the guaranty, the language of the guaranty provides as follows: "The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth." Given this language, Nancy's obligations under the guaranty are clearly not revoked for the first two promissory notes, which were executed prior to Nancy's death and thus cannot be considered "prospective" or future transactions. Additionally, we can find no evidence in our record to suggest that Nancy's obligations under the guaranty are revoked for the third promissory note, which was executed after her death. Specifically, there is nothing in the record which demonstrates that notice of Nancy's death was ever provided to Gothenburg State Bank, which would have triggered the revocation of Nancy's obligations under the guaranty for any future transactions. In fact, while the president of the bank authored an affidavit which was admitted into evidence at the summary judgment hearing, such affidavit made no mention of the bank ever receiving notice of Nancy's

death. Moreover, while we recognize that given the length of time that has passed since Nancy's death in October 2012, it is unlikely that her estate is still solvent, there was no evidence presented which demonstrated the estate's insolvency.

Based upon the specific language of the guaranty regarding the continuing obligations of a deceased guarantor, we cannot find that the district court erred in determining that there were four guarantors who were liable for the payment of the promissory notes, Leslie and Nancy and the Breinigs. Accordingly, we affirm the district court's decision finding that the Breinigs owed Leslie one-half, rather than two-thirds, of the full payment he made on the promissory notes.

### (d) District Court's Calculation of Interest

In his cross-appeal, Leslie next argues that the district court erred in calculating both prejudgment and postjudgment interest. We address each assertion in turn.

#### (i) Incorrect Calculation of Prejudgment Interest

As to the amount of prejudgment interest awarded to Leslie by the district court, Leslie asserts that the court made a mathematical error in its calculations.

Upon our review, we conclude that the district court did make a very minor error in its mathematical calculations. While the district court calculated that the amount of prejudgment interest owed to Leslie by the Breinigs totaled $582.91, our calculations reveal that the actual amount of prejudgment interest owed to Leslie by the Breinigs totaled $583.26, a difference of 35 cents. Based upon our correction of this minor error, we modify the district court's order to provide judgment against the Breinigs and in favor of Leslie in the amount of $76,272.31.

#### (ii) Ordering Postjudgment Interest at Judgment Rate
#### Rather Than Contract Rate

Leslie argues that the district court erred in awarding postjudgment interest at the "judgment rate" rather than at the agreed upon contract rate. We find merit to Leslie's argument.

Neb. Rev. Stat. § 45-103 (Reissue 2010) provides an explanation for how to calculate interest on decrees and judgments for the payment of money. However, the statutory section also provides that this interest rate shall not apply to "An action founded upon an oral or written contract in which the parties have agreed to a rate of interest other than that specified in this section." Here, each of the three promissory notes executed by Sportsman's Gallery in favor of Gothenburg State Bank includes an agreed-upon interest rate for the unpaid principal balance. The two promissory notes that were executed on July 9, 2012, provide for an interest rate of 5.25 percent. The third promissory note, executed on July 10, 2013, provides for an interest rate of 5.73 percent. The district court should have awarded postjudgment interest based upon these agreed upon interest rates, rather than upon the judgment rate set forth in § 45-103. As such, we modify the district court's order such that from the date the judgment was entered, December 9, 2020, the judgments against the Breinigs and Sportsman's Gallery shall continue to bear interest at the agreed upon rates delineated in the terms of each promissory note.

### (e) Leslie's Claim for Indemnification

Leslie argues that the district court erred in determining that his claim for indemnification against the Breinigs was barred by the statute of limitations. Ultimately, we need not decide

- 10 -

whether the relevant statute of limitations barred Leslie's indemnification claim. Because we are affirming the district court's decision to grant summary judgment in favor of Leslie and against the Breinigs on his claim of breach of the guaranty, Leslie is entitled to receive all of the damages that may be awarded to him under his alternative theory of indemnification.

Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay, or has agreed to pay, unless the party making the payment is barred by the wrongful nature of his or her conduct. See *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007). Although Leslie asserts in his brief on cross-appeal that he is entitled to indemnification from the Breinigs for the total amount he paid on the promissory notes, as we have discussed above, Leslie is not entitled to the whole amount. See *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998) (holding that recovery against coguarantor is limited to coguarantor's contributory share). As a coguarantor of the promissory notes, Leslie is entitled only to the Breinigs' proportionate share of the payment. He was awarded that amount pursuant to his claim for breach of the guaranty. In fact, in Leslie's complaint, he only asks for his proportionate share under the guaranty to be awarded to him pursuant to his indemnification claim.

(f) Leslie's Claim for Unjust Enrichment

In his complaint, Leslie asserts a claim of unjust enrichment against the Breinigs. Specifically, he asserted that the Breinigs have used or sold assets of Sportsman's Gallery for their own benefit, instead of using those assets to pay the company's debt to Gothenburg State Bank. Leslie argues that the Breinigs have been enriched by their use of the company's assets and that such enrichment has come "at the expense of [Leslie.]" Leslie believes that "[i]t would be unjust and inequitable for the Breinigs to retain the benefit received through the use or sale of Sportsman's [Gallery's] assets."

In its order, the district court found that the statute of limitations barred Leslie's claim of unjust enrichment. The court found that the limitations period was 4 years and that the period had begun to run on August 27, 2014, when Leslie assigned away his rights to Sportsman's Gallery and, thus, to any profits from the company. Because Leslie did not file his complaint until February 10, 2019, his claim was barred by the 4-year statute of limitations.

In his cross-appeal, Leslie asserts that the district court used the wrong triggering date for the statute of limitations to begin to run. He believes that the 4-year statute of limitations period began to run on February 10, 2015, the date he paid off the promissory notes and the date the Breinigs were "unjustly enriched." Brief for cross-appellant at 28. Because he filed his complaint exactly 4 years later on February 10, 2019, his unjust enrichment claim was not time barred.

Upon our review, we agree with the determination of the district court that Leslie's claim for unjust enrichment against the Breinigs was barred by the statute of limitations. Neb. Rev. Stat. § 25-212 (Reissue 2016) provides, "An action for relief not otherwise provided for in Chapter 25 can only be brought within 4 years after the cause of action shall have accrued." We determine, as did the district court, that the 4-year time period in § 25-212 applies to Leslie's unjust enrichment claim. Leslie does not argue any other statute of limitations applies. We must now determine when the 4-year statute of limitations began to run.

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally

will not be set aside by an appellate court unless clearly wrong. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). Unjust enrichment has been defined to mean a transfer of a benefit without adequate legal ground. See, e.g., *Abante, LLC v. Premier Fighter*, 21 Neb. App. 53, 836 N.W.2d 374 (2013). We do not find that the district court was clearly wrong in deciding that the limitations period for Leslie's claim of unjust enrichment began to run on the date he assigned his interest in Sportsman's Gallery to the Breinigs. At that point, he no longer had any right to be involved in the decisions of the company, including financial decisions. In addition, he no longer had the right to claim any further profits earned by the company.

To the extent that Leslie suggests in his brief on appeal that the Breinigs owed him a duty to use the company's profits to pay off the promissory notes after he assigned his rights in Sportsman's Gallery to them, such assertion was not raised in his complaint or at any point during the lower court proceedings. As such, we do not consider such argument on appeal. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021) (appellate court will not consider argument or theory that is raised for first time on appeal).

Leslie did not file his complaint until February 10, 2019, approximately 4 years and 5 months after August 27, 2014, when he assigned his rights in Sportsman's Gallery to the Breinigs and, thus, when his unjust enrichment claim began to accrue. As such, his claim was barred by the statute of limitations.

## VI. CONCLUSION

Upon our review, we find no error in the district court's decision which concluded that Leslie's claim for breach of the promissory notes and breach of the guaranty was not barred by the relevant statute of limitations. We also find no error in the district court's decision which concluded that the Breinigs' counterclaim and Leslie's claim for unjust enrichment were barred by the statute of limitations.

However, we modify the district court's order such that judgment is entered against Sportsman's Gallery in the amount of $152,644.62, which is the total amount paid by Leslie to Gothenburg State Bank pursuant to the promissory notes plus accrued interest. We also modify the judgement entered against the Breinigs to correct a minor mathematical error. The Breinigs are required to pay to Leslie the amount of $76,272.31, which represents one-half of the total amount paid by Leslie to Gothenburg State Bank plus accrued interest. Finally, we modify the district court's order to reflect that from the date the judgment was entered, December 9, 2020, the judgments against the Breinigs and Sportsman's Gallery shall continue to bear interest at the agreed upon rates delineated in the terms of each promissory note, rather than at the judgment rate provided by § 45-103.

AFFIRMED AS MODIFIED.